Joseph **TYSON**, Sr., et al., Plaintiffs,

v.

**NEW YORK CITY HOUSING AUTHORITY et al., Defendants.**

73 Civ. 859.

United States District Court,
S. D. New York.

Jan. 9, 1974.

Jerome B. Kauff, Katherine M. Preminger, New York City, for plaintiffs Joseph Tyson, Sr. and Ernestine Tyson and for plaintiff-intervenors Juan and Virgenmina Martinez.

Burt Neuborne, New York Civil Liberties Union, S. Stephen Rosenfeld, New York City, for plaintiff Mildred Brown.

Otto M. Bonaparte, New York City, for defendants; Aaron Kohn, Jeanne Hollingsworth, Gerald Davis, Raphael Samuel, New York City, of counsel.

METZNER, District Judge.

This is a motion to dismiss the complaint pursuant to Rule 12(b), Fed.R. Civ.P., for (1) failure to state a claim upon which relief may be granted, and (2) lack of subject matter jurisdiction.[1]

Plaintiffs are tenants in New York City public housing projects. They have brought this suit as a class action on behalf of themselves and others similarly situated against the New York City Housing Authority (HA) and various individuals. Jurisdiction is invoked under the Civil Rights Act, 28 U.S.C. § 1343(3), and 28 U.S.C. § 1331(a). Plaintiffs seek injunctive and declaratory relief against the defendants pursu-

---

1. In support of its motion to dismiss, defendants submitted an affidavit of Simeon Golar, former Chairman of the New York City Housing Authority during the events in question. In addition, a transcript of the plaintiffs' termination hearings was appended to the defendants' reply brief on this motion. Pursuant to Rule 12(b), both the affidavit and the transcript have been excluded from consideration by the court on the instant motion.

The defendants throughout their moving papers indicated that they were only seeking to dismiss the complaint for failure to state a claim and for lack of subject matter jurisdiction. Plaintiffs' answering papers treated the motion as such and did not contain any counter-affidavit. It was not until the defendants' reply brief was submitted that they indicated for the first time that they also were seeking summary judgment under Rule 12(b) on the basis of the affidavit.

ant to 28 U.S.C. § 2201 et seq., and 42 U.S.C. § 1983.

The complaint challenges the substantive criteria for, and procedures followed in, HA proceedings to terminate plaintiffs' leases. It is claimed that each plaintiff faces eviction as a nondesirable tenant solely and exclusively because of the misdeeds of his adult child, who does not reside in the parental home. As a result of these proceedings, plaintiffs allege a deprivation of their constitutional rights and of their rights under the United States Housing Act of 1937, 42 U.S.C. § 1401 et seq. (Housing Act).

■ I see no reason to permit the prosecution of this action as a class action. Adequate remedy is afforded these plaintiffs suing in their individual capacities. As to other tenants who may in the future encounter the claimed unconstitutional action by the defendants, the court can properly assume that an agency of government will not persist in taking actions which violate the rights of the tenants. Vulcan Society v. Civil Service Commission, 490 F.2d 387 (2d Cir. 1973). The application by Juan and Virgenmina Martinez to intervene pursuant to Fed.R.Civ.P. 24(b)(2) is granted. The facts in their claim are similar to those advanced by the plaintiffs here.

Plaintiff Mildred Brown has resided in the East River Houses, which is operated by the HA, since 1953. Separated from her husband since 1968, she currently resides there with a 24 year old daughter and a grandchild. A son, born on August 3, 1950, also lived in the home until July 1969 when plaintiff requested him to leave her household because of his heroin addiction. Thereafter, on July 28, 1970, plaintiff petitioned to have her son civilly committed to the custody of the New York State Narcotic Addiction Control Commission, where he remained as an inpatient for nine months. Upon his release in May 1971, plaintiff's son did not return to her home.

On September 14, 1972, Mrs. Brown received a Specification of Charges accusing her of nondesirability because her 22 year old son, who had not lived with her for three years, had been arrested for engaging in narcotics and gambling activities on the project premises. Three separate hearings were then held on this nondesirability allegation at which plaintiff was not represented by counsel. These proceedings comported with the safeguards set forth in Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970), and the consent decree thereafter entered in the district court disposing of the litigation. On January 17, 1973, the defendant Lee, a HA hearing officer, ruled that plaintiff's tenancy should be terminated because of her son's actions on HA premises. On January 23, 1973, plaintiff, still unrepresented by counsel, appealed to the HA. On February 1, 1973, her appeal was denied and she was found "ineligible for continued occupancy on the ground of Non-Desirability." Court proceedings have not been initiated to evict plaintiff from the premises.

Plaintiffs Joseph and Ernestine Tyson have resided in St. Nicholas Houses, another HA project, since 1954. Their son, now 23 years old, has not resided in the family home since May 1970. At the time this suit was filed, he was serving a three-year sentence in a New York state correctional facility. He was scheduled for release from prison in August 1973.

On July 2, 1970, the son participated in an attempted robbery on the premises of St. Nicholas Houses during which a tenant was shot. After their son was convicted for this crime and sentenced to a prison term, plaintiffs were advised by defendant Colbert, who is the manager of their project, that he was recommending to the HA that they be evicted because of the criminal conduct of their son.

On February 24, 1972, a hearing, again pursuant to *Escalera,* was held be-

fore defendant Lee. No evidence was adduced linking the Tysons with the unlawful conduct of their son. Nonetheless, on May 1, 1972, plaintiffs were found undesirable because of their son's criminal activity at the project. On November 20, 1972, plaintiffs' appeal was denied by the HA, and they were found "ineligible for continued occupancy on the ground of non-desirability." Court proceedings have not been initiated to evict plaintiffs from their apartment.

Plaintiffs Juan and Virgenmina Martinez have been tenants in HA projects for over ten years and have resided at Douglass Houses since 1965. The Martinezes have six children, all of whom reside with them except a married 20 year old daughter and a married 19 year old son. The son has not lived with his parents since February 1972 when plaintiffs asked him to leave the family home. Thereafter on May 15, 1972, he was arrested for a robbery occurring outside of the project premises, for which he was later sentenced to nine months in prison.

On January 2, 1973, plaintiffs received a Specification of Charges charging them with "non-desirability" because their son had engaged in criminal conduct off the project premises. A hearing, pursuant to *Escalera*, was then held on January 22, 1973, at which the only evidence introduced by the HA was the criminal court record relating to plaintiffs' son's involvement in the robbery. The Martinezes introduced testimony that their son had not been living in their home since February 1972, and that they had not seen him since that time. Nonetheless, the hearing officer recommended that the plaintiffs' tenancy be terminated because of the criminal conduct of their son. On April 11, 1973, the Martinez' appeal to the HA was denied and they were found "ineligible for continued occupancy on the ground of non-desirability." Court proceedings have not been initiated to evict plaintiffs from their apartment.

The instant action is concerned primarily with a substantive attack on the nondesirability regulation. Plaintiffs claim that constitutional protections prevent the HA from terminating their leases on the grounds of nondesirability simply because their adult children, not residing in their apartments, have committed criminal acts.

The threshold question we must consider is whether the plaintiffs are barred by res judicata from litigating this suit on the basis of a consent judgment entered on March 25, 1971 in *Escalera v. New York City Housing Authority*, 67 Civ. 4307. That judgment followed the Second Circuit's decision in *Escalera v. New York City Housing Authority*, *supra*, which reversed a dismissal of several consolidated class action suits brought by tenants in New York City public housing projects against the HA. The plaintiffs here were residents of HA projects at the time the consent judgment was entered and, as members of the class, would be bound by that judgment. Fed.R.Civ.P. 23.

These suits challenged the constitutionality of the procedures used by the HA (1) for terminating tenancies on the grounds of nondesirability, (2) for terminating tenancies for violation of HA rules and regulations, and (3) for assessing "additional rent" charges. 425 F.2d at 857. At page 865, the court said, "the only issues here are whether certain HA procedures pass muster under the due process clause of the Fourteenth Amendment."

Finally, the court stated:

"We express no opinion on the validity of the HA's substantive grounds for taking the three types of actions in this case. *The substantive questions are not in issue.*" 425 F.2d at 867, n. 15. (Emphasis added.)

One of the consolidated cases embraced by the *Escalera* decree was Rolle v. New York City Housing Authority, 67 Civ. 4306, which challenged not only the procedures used by the HA in terminating tenancies for nondesirability, but also sought to enjoin the defendant "from continuing to enforce their policy

of terminating tenancies on the basis of substantive standards . . . which are unconstitutionally vague and arbitrary both as written and as applied."

■ While it is settled that a consent judgment, or a judgment entered upon a settlement, is a final judgment and res judicata of the cause of action in issue, such a judgment only operates as a bar to matters which were actually determined on the merits in the former suit. See 1B Moore, Federal Practice, ¶ 0.-409[5] at 1026 (2d ed. 1965). The issue of substantive due process raised by the *Rolle* complaint was never determined in the *Escalera* opinion on appeal, nor in the consent judgment which followed in the district court on remand.

The judgment provided that "the within actions are settled according to the terms of the stipulation and exhibits annexed thereon . . . which embody the new *procedures* for the terminations of tenancies which the Court hereby approves as in conformity with the requirements of due process of law as set forth in Escalera v. NYCHA . . . . ." (Emphasis added.) Judge Mansfield's opinion approving the consent judgment and the maintenance of the consolidated *Escalera* suits as a class action declared that "[t]hese suits by tenants of buildings operated by the New York City Housing Authority . . . *attack the constitutionality of procedures* relating to termination of tenancies and breach of Housing Authority Rules and Regulations." (Emphasis added.)

■ Similarly, two of the procedural due process challenges raised in the instant suit are not barred by res judicata because they were never raised in *Escalera*. These claims are the failure to appoint counsel and the HA's selection of its hearing officers. The third challenge to the use of secret files by the defendants was disposed of in *Escalera*. 425 F.2d at 862. To the extent that plaintiffs claim that the HA has violated the terms of the decree in this regard, their remedy lies with the *Escalera*

court. Therefore, the cause of action relating to the use of the files is dismissed as barred by res judicata; otherwise the motion to dismiss on this ground is denied.

We turn now to the motion to dismiss for failure to state a claim. Since this is a motion addressed to the pleadings, we must accept the allegations in the complaint as true. "An action, especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of facts, which could be proved in support of their claims." Escalera v. New York City Housing Authority, *supra* at 857.

Plaintiffs' major constitutional claim, set forth in Paragraph 30 of the complaint, is a narrow one: whether the HA may constitutionally evict an entire family from public housing on the sole ground that an adult child in that family, who does not reside in the parental home, has committed criminal acts which are deemed nondesirable.

■ Imposing criminal liability on a person on the basis of associations has long been regarded as constitutionally defective by our courts. This judicial aversion has arisen because guilt by association is antithetical to the concepts of personal guilt and individual responsibility which are touchstones of the Anglo-American system of law. "In our jurisprudence guilt is personal." Scales v. United States, 367 U.S. 203, 224, 81 S.Ct. 1469, 1484, 6 L.Ed.2d 782 (1961). Implicit within the concept of due process is that liability may be imposed on an individual only as a result of that person's own acts or omissions, not merely because of his association with any group.

". . . when the imposition of punishment on a ·status or on conduct can only be justified by reference to the relationship of that status or conduct to other concededly criminal activity . . . *that relationship must be sufficiently substantial to sat-*

*isfy the concept of personal guilt in order to withstand attack under the Due Process Clause of the Fifth Amendment."* 367 U.S. at 224–225, 81 S.Ct. at 1484. (Emphasis added.)

This notion of personal guilt is not limited to criminal actions. Thus, the Supreme Court has struck down a state loyalty oath which, without any proof of individual responsibility for the alleged wrongful conduct, indiscriminately classified innocent along with guilty behavior solely because of associational relationship. See, Wieman v. Updegraff, 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Similarly, the forfeiture of a father's truck used by his son in connection with criminal activity has been adjudged unconstitutional when the father was totally innocent of any wrongdoing. In that case, the forfeiture imposed "a penalty upon an innocent individual in no way 'involved in a criminal enterprise,' and [deprived] him of his personal property without just compensation." United States v. One 1971 Ford Truck, 346 F.Supp. 613, 619 (C.D.Cal.1972); cf., McKeehan v. United States, 438 F.2d 739, 745 (6th Cir. 1971).

Plaintiffs have also stated a claim for relief on equal protection grounds. In Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 175, 92 S.Ct. 1400, 31 L. Ed.2d 768 (1972), the Supreme Court struck down a Louisiana statute which deprived illegitimate children of the right to workmen's compensation benefits, while granting them to their legitimate siblings. The Court held:

> "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is *contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing.* Obviously, no child is responsible for his birth and penaliz-

ing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent." Weber v. Aetna Casualty & Surety Co., *supra* at 175, 92 S.Ct. at 1406. (Emphasis added.) *Cf.*, King v. Smith, 392 U.S. 309, 324, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

These principles are fully applicable to the instant case where we are dealing with the mirror image of *Weber*—it is the parent whose "head" is being visited with "condemnation" because of the wrongful conduct of his adult child.

There must be some causal nexus between the imposition of the sanction of eviction and the plaintiffs' own conduct. Defendants rely simply on the existence of the parent-child relationship. This is insufficient to sustain defendants' position that the complaint fails to state a claim. The motion to dismiss is denied.

Plaintiffs have also alleged additional causes of action in their complaint which the HA seeks to dismiss. In Paragraph 31, plaintiffs aver that by attributing to them the wrongful conduct of their adult children, defendants have infringed on their rights of privacy and association guaranteed under the First, Fourth, Fifth, Ninth and Fourteenth Amendments.

■ Insofar as privacy is concerned, the court cannot perceive any possible basis for plaintiffs' claim that their right to privacy has been violated. The constitutional protections of the right to privacy developed in those cases "having to do with sexual intercourse and its possible consequences." Roe v. Ingraham, 480 F.2d 102, 107 (2d Cir. 1973); *see also*, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Griswold v. Connecticut, 381 U.S. 479, 85 S. Ct. 1678, 14 L.Ed.2d 510 (1965).

More recently, the Second Circuit has indicated in Roe v. Ingraham, *supra*, 480 F.2d at 108, that it is not "obvious" that the right to privacy will be confined to these areas of sexuality, and "its limits remain to be worked out in future cases." The court therefore reversed the dismissal of a complaint which charged

that the requirement of a physician having to file all prescriptions he writes, including his patient's name, invaded the patient's right to privacy with respect to the status of his health and the medical treatment he was receiving. The court found that a patient's interest "in keeping to himself the existence of his physical ailments and his doctor's prescriptions for them," *might* be embraced within the concept of privacy. *Id.* 480 F.2d at 108.

The instant plaintiffs, however, have no such interest to protect, nor do they have any privacy expectation in regard to the commission of wrongful acts by their adult children. Therefore, the claim sounding in privacy must be dismissed.

However, plaintiffs' allegation that their right of association has been infringed does state a good cause of action. The nub of this claim is that by declaring these tenants ineligible for continued occupancy on the basis of their children's acts, the defendants have acted "solely from the fact of association" by the plaintiffs with their children. Fisher v. Snyder, 346 F.Supp. 396, 398 (D.Neb.1972), aff'd, 476 F.2d 375 (8th Cir. 1973). Such a claim, if proven, would run afoul of the First Amendment which guarantees to every person the right to freely associate with others, including members of his family, without interference from the state. *See, e. g.,* Green v. Connally, 330 F. Supp. 1150 (D.D.C.), aff'd sub nom. Coit v. Green, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 550 (1971); Fisher v. Snyder, *supra*; *cf.,* Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966).

The third cause of action asserted against these defendants is contained in Paragraph 32 and alleges that the provisions in the procedures for terminating a tenancy for nondesirability are impermissibly vague and overbroad in violation of the Fourteenth Amendment. This regulation provides:

"A. NON-DESIRABILITY is defined by the Authority as the conduct or behavior of the tenant (or any member of his family or any person occupying the premises of the tenant) which constitutes:

(1) A detriment to the health, safety or morals of the tenant's neighbors, or the community.

(2) An adverse influence upon sound family and community life.

(3) A source of danger or a cause of damage to the premises or property of the Authority.

(4) A source of danger to the peaceful occupation of other tenants, or

(5) A nuisance"

It is claimed that the regulation is defective because it leaves untrammeled discretion in the HA to decide what kind of conduct is prohibited and who should bear the responsibility for such conduct.

■ It is settled that a regulation or statute which delegates unlimited discretion to enforcers of a law may be unconstitutionally overbroad. *See, e. g.,* Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972).

■ In addition, plaintiffs also claim that the statute is overbroad because it does not give adequate warning of the conduct it seeks to prohibit. A basic principle of due process is that a law "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, *supra* at 108, 92 S.Ct. at 2298. *See also,* Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1971). The mere reading of the provisions attacked by the plaintiffs clearly indicates that the claim on its face withstands a motion to dismiss.

■ Plaintiffs have also stated a claim for relief on statutory grounds in

Paragraph 33 of the complaint. This allegation charges the defendants with violating the United States Housing Act of 1937 and the regulations of the Department of Housing and Urban Development (HUD) promulgated thereunder.

Section 8 of the Housing Act (42 U.S.C. § 1408) provides that the United States Housing Authority may "make, amend, and rescind such rules and regulations as may be necessary to carry out the provisions of this chapter." Pursuant to this section, HUD issued HUD Circular, 12–17–68, which provides in pertinent part:

"2.c. To determine whether applicants or occupants should be admitted to or remain in its project, a Local Authority may establish criteria and standards bearing on whether the conduct of such tenants (in an applicant's present or prior housing, or in occupancy in the case of present tenants) does or would be likely to interfere with other tenants in such a manner as to materially diminish their enjoyment of the premises. *Such interference must relate to the actual or threatened conduct of the tenant* and not be based solely on such matters as the marital status of the family, the legitimacy of the children in the family, police records, etc."

Plaintiffs contend that by evicting tenants on the basis of conduct of their adult children not residing in the housing projects, the defendants have violated the underscored language of HUD Circular 12–17–68 above.

Paragraph 2.c. appears to be clear and unequivocal on its face when it speaks in terms of the "conduct of the tenants." It refers to the members of the family living in the apartment. Therefore, defendants' motion to dismiss this claim is denied.

The remaining two causes of action charge deprivations of procedural due process rights in connection with the termination proceedings taken against these tenants.

In Paragraph 35 plaintiffs allege that the HA's failure to supply Mrs. Brown with appointed counsel constitutes a violation of the Sixth and Fourteenth Amendments because it prevented her from presenting an effective defense.

In support of this claim, plaintiffs rely on a series of cases running from Powell v. Alabama, 287 U.S. 47, 53 S.Ct. 55, 77 L.Ed. 158 (1932), to Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). In these cases however, the Court held that the Sixth Amendment required counsel to be appointed to represent indigent persons because they were defendants in criminal actions where there was a possibility of imprisonment. The Court has not extended this constitutional requirement to other areas of the law in which indigent persons are involved. Thus, in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which involved the termination of welfare benefits, the Court specifically noted that "[w]e do not say that counsel must be provided at the pre-termination hearing, but only that the recipient must be allowed to retain an attorney if he so desires." At 270, 90 S.Ct. at 1022.

United States ex rel. Bey v. Connecticut, 443 F.2d 1079 (2d Cir. 1971), and United States ex rel. Schuster v. Herold, 410 F.2d 1071 (2d Cir.), cert. denied, 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969), relied on by plaintiffs, are inapposite. These cases each involved the distinct possibility of loss of liberty, through the revocation of parole and commitment, and are thus distinguishable from the case at bar.

We conclude that the appointment of counsel in a HA eviction proceeding is not required by the Constitution. As long as a tenant is afforded the opportunity to be heard either pro se or by a retained attorney, due process is satisfied. *Cf.*, Burr v. New Rochelle Housing Authority, 479 F.2d 1165 (2d Cir. 1973). The motion to dismiss Paragraph 35 is granted.

Plaintiffs' final cause of action in Paragraph 36 states that they have been denied an unbiased hearing and appeal in violation of the Fourteenth Amendment because of the. HA's failure to appoint independent hearing officers and because the Chairman of the HA, Simeon Golar, made "public and private statements pre-judging the 'guilt' of Mr. and Mrs. Tyson." ·

As far as the hearing officer is concerned, plaintiffs contend that the process utilized to select these officers is constitutionally defective because it permits persons with a pecuniary interest to sit as officers. The Supreme Court has made it abundantly clear that "those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." Gibson v. Berryhill, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L. Ed.2d 488 (1973); *see also*, Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). Whether the HA's system of appointing hearing officers violates these decisions must await a trial.

Insofar as the claim of pre-judged guilt is concerned, it is also clear that an impartial decision-maker is a basic constituent of rudimentary due process. Fitzgerald v. Cawley, 368 F.Supp. 677 (S.D.N.Y.1973); *cf.*, Goldberg v. Kelly, *supra*, 397 U.S. at 271, 90 S.Ct. 1011, 25 L.Ed.2d 287. "Any other collateral procedural guarantees are largely without meaning if the deciding tribunal has in some way adversely prejudged the merits of the case." Simard v. Board of Education of Town of Groton, 473 F.2d 988, 993 (2d Cir. 1973). Therefore, the motion to dismiss Paragraph 36 is denied.

The remaining contentions of the defendants may be disposed of summarily. First, subject matter jurisdiction exists under 42 U.S.C. § 1983 and its counterpart, 28 U.S.C. § 1343. The defendants' action in adjudging the plaintiffs nondesirable tenants and in ordering their eviction are acts of the state and therefore satisfy the state ac-

tion requirement of Section 1983. *See*, Burr v. New Rochelle Housing Authority, *supra*, 479 F.2d at 1167; Escalera v. New York City Housing Authority, *supra*, 425 F.2d at 864. In addition, plaintiffs have alleged several substantial deprivations of constitutional rights.

Secondly, exhaustion of state judicial remedies is not a prerequisite to the maintenance of a civil rights action. Fitzgerald v. Cawley, *supra*; *cf.*, Escalera v. New York City Housing Authority, *supra* 425 F.2d at 865–866. Similarly, plaintiffs have exhausted all available state administrative remedies assuming that exhaustion would have been required.

Finally, *Escalera* indicates that abstention is not properly invoked in the instant case because important federal constitutional rights are involved and because there are no unsettled issues of state law at hand.

So ordered.