# AMAZIAH WILLIAMS and VAIMOANA WILLIAMS, Appellants, *v.* HAWAII HOUSING AUTHORITY, Appellee

NO. 9324

(CIVIL NO. 68834)

OCTOBER 26, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Amaziah and Vaimoana Williams (Appellants) appeal the circuit court's decision affirming an order of the Hawaii Housing Authority (Authority) evicting Appellants from the apartment they rent from Authority. We affirm.

Appellants had been tenants of Authority since July 1970. On June 1, 1978, the parties entered into a written rental agreement (agreement) containing numerous covenants. Those pertinent to this appeal read as follows:

9. TENANT'S OBLIGATIONS: Tenant shall, at all times during the term of this Rental Agreement perform the following obligations:

\* \* \* \* \*

(b) Not permit any person to occupy the dwelling unit other than the persons listed on the application of Tenant, without first obtaining Management's prior written consent;

\* \* \* \* \*

(n) Conduct himself and cause other persons who are on the premises with his consent to conduct themselves in a manner which will not disturb his neighbors' peaceful enjoyment of their accommodations and will be conducive to maintaining the project in a decent, safe, and sanitary condition;

11. MUTUAL COVENANTS: Management and Tenant mutually agree as follows:

\* \* \* \* \*

(n) In case of any default by Tenant in the payment of rental or the observance and performance of any covenant herein, Management shall notify Tenant of the default in writing and shall specify the time within which the default and noncompliance must be remedied and corrected. If [T]enant fails to remedy and correct the default and noncompliance within the time specified in the notice, Management may terminate this Rental Agreement; however, Management shall not terminate or refuse to renew this Rental Agreement other than for serious or repeated violation of material terms of this Rental Agreement such as failure to make payments due under this Rental Agreement or to fulfill Tenant's obligations set forth herein or for other good cause. Management shall give written notice of proposed termination of this Rental Agreement of:

\* \* \* \* \*

(3) A reasonable time commensurate with the exigencies of the situation in the case of creation or maintenance of a threat to the health or safety of other tenants or Management's employees[.]

In a letter dated June 19, 1981, after a conference between the parties the same day, Appellants were informed that Authority would institute proceedings to terminate the agreement for Appellants' violation of sections 9(b) and (n). Accordingly, on June 22, 1981, an "Interoffice Memorandum" was rendered to Mr. Norman Tam, the Hearing Officer,[1] by Authority's project manager recommending Appellants' eviction.[2] The memorandum set forth a

---

[1] The appellation "hearing officer" is a misnomer. The "hearing officer" does not hear the matter, but in fact presents the case for the Authority to the hearing board. *See* note 3, *infra*.

[2] One of Appellants' claimed errors is that a copy of this memorandum was given to each member of the hearing board before the hearing. Appellants argue this was

long list of violations by Appellants and their family members who resided with them. At the time of the hearing, Appellants' household consisted of Appellants' grandchildren ranging in age from 6 to 17 and two sons, Happy, age 26, and Tonny, age 22.

An eviction hearing was held before Oahu Hearing Board B[3] (hearing board) on July 16, 1981, where Appellants were present with counsel. In its Findings of Fact, Conclusions of Law, Decision and Order entered on August 31, 1981, the hearing board ordered Appellants and all persons living with them to vacate the premises within five days of service of the order. The order was served the same day. On September 1, 1981, Appellants filed a motion for reconsideration. The motion was denied on October 15, 1981, and

---

"evidence" improperly viewed by the board members before being admitted. However, in our view, the memorandum is nothing more than a statement of charges and is not evidence. *See also* note 5, *infra.*

[3] Eviction of the Authority's tenants is governed by Hawaii Revised Statutes (HRS) chapter 360, part 1 (Supp. 1983). The hearing board is authorized by HRS § 360-3 (Supp. 1983), which reads as follows:

Hearings.  (a) Where the authority proposes to terminate a lease, rental agreement, permit, or license, and evict a tenant, licensee, or other occupant under section 360-2, a hearing shall be held to determine whether cause exists for such action. The authority shall give written notice to the person concerned specifying the reason for which the eviction is proposed and fixing the date and place of hearing. The notice shall be given at least five days before the date set for the hearing. At the hearing, before final action is taken the person concerned shall be entitled to be heard in person or through counsel, and shall be accorded a full and fair hearing.

(b) Hearings shall be conducted by a trial examiner or board appointed by the authority. The board shall consist of not less than three persons. Trial examiners or members of the board may be commissioners or employees of the authority. At least one trial examiner or board, hereinafter called the hearing examiners, shall be established in each county of the State. The findings, conclusions, decision, and order of the hearing examiners shall be final unless an appeal is taken as hereinafter provided.

(c) The hearing examiners shall have the same powers respecting administering oaths, compelling the attendance of witnesses and the production of documentary evidence, and examining witnesses, as are possessed by circuit courts. In case of disobedience by any person of any order of the hearing examiners, or of any subpoena issued by them, or the refusal of any witness to testify to any matter regarding which he may lawfully be questioned, any circuit judge, on application by the hearing examiners, shall compel obedience as in the case of disobedience of the requirements of a subpoena issued by a circuit court, or a refusal to testify therein.

Appellants filed a notice of appeal to the commissioners[4] of the Hawaii Housing Authority on November 2, 1981. On December 18, 1981, after a hearing in which Appellants were again represented by counsel, the commissioners affirmed the hearing board. On December 28, 1981, Appellants filed a notice of appeal to the First Circuit Court. In its order entered on April 5, 1983, the circuit court affirmed the commission's decision, and Appellants appealed on May 4, 1983.

Although Appellants raise a number of issues, we find the only questions that merit discussion are (1) whether the hearing board's decision, affirmed by the commission, was erroneous; (2) whether the appeal of that decision to the commission was properly conducted; and (3) whether covenant no. 9(n) is vague and overbroad.[5] We find no error and affirm.

## APPELLANTS' VIOLATION OF RULE 3(b)(5), RULES OF THE SUPREME COURT

We note for the record at the outset that Appellants' opening brief is in gross violation of Rule 3(b)(5),[6] Rules of the Supreme Court (RSC). Under the heading of "Points And Authorities" Appellants have lumped together the alleged errors relied upon by them and their arguments on those various points. The result is a confused and confusing jumble of argument with vague references to the record. Rule 3(b)(5) requires concise statements of errors committed by the tribunal appealed from, whether administrative or judicial, how the issue was raised below, and where in the record such action is shown. *Airgo, Inc. v. Horizon Cargo Transport, Inc.*, 66 Haw. 590, 670 P.2d 1277 (1983); *In re Miller and Lieb Water Co.*, 65

---

[4] The Authority is a public body corporate consisting of eight commissioners. HRS § 356-5 (Supp. 1983).

[5] Appellants' other issues on appeal relate to procedural matters. We find that the alleged errors did not prejudice the substantial rights of Appellants. *See In re Wind Power Pacific Investors – III*, 67 Haw. 342, 686 P.2d 831 (1984).

[6] Now part of Rule 28, Hawaii Rules of Appellate Procedure, effective June 1, 1984.

Haw. 310, 651 P.2d 486 (1982); *Wright v. Chatman,* 2 Haw. App. 74, 625 P.2d 1060 (1981).

Appellants' counsel's dereliction has made for great difficulty in understanding his arguments and in finding the alleged errors in the record. Where an opening brief has failed to comply with the requirements of Rule 3(b)(5), RSC, the entire appeal may be dismissed pursuant to Rule 3(f), RSC. *Makani Development Co. v. Stahl,* 4 Haw. App. 542, 670 P.2d 1284 (1983). In spite of Appellants' dereliction, we have reviewed the record herein and find no error.

## STANDARD OF REVIEW

This is a "secondary" appeal from an administrative agency's decision. In determining whether the circuit court's decision was correct, we apply the provisions of Hawaii Revised Statutes (HRS) § 91-14(g)[7] to the agency's decision. *Outdoor Circle v. Harold K. L. Castle Trust Estate,* 4 Haw. App. 633, 675 P.2d 784 (1983). In the instant case, the question whether the hearing board's findings are correct is governed by HRS § 91-14(g)(5). Review of the issue of the conduct of the appeal to the commission is governed by HRS § 91-14(g)(1). Our review is further tempered by the principle that the hearing board's decision carries a presumption of validity and the appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in

---

[7] HRS § 91-14(g) (1976, as amended) provides:
Judicial review of contested cases.

\* \* \* \* \*

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

    (1) In violation of constitutional or statutory provisions; or
    (2) In excess of the statutory authority or jurisdiction of the agency; or
    (3) Made upon unlawful procedure; or
    (4) Affected by other error of law; or
    (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or
    (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

its consequences. *In re Hawaii Electric Light Co.*, 60 Haw. 625, 630, 594 P.2d 612, 617 (1979); *In re Kauai Electric Division of Citizens Utilities Co.*, 60 Haw. 166, 187, 590 P.2d 524, 538 (1978); *In re Kaanapali Water Corp.*, 5 Haw. App. 71, 678 P.2d 584 (1984); *Chock v. Bitterman*, 5 Haw. App. 59, 678 P.2d 576 (1984).

## VIOLATION OF RENTAL AGREEMENT

### 1.

Although the recommendation of the project manager was that the hearing board proceed with the eviction under both paragraphs 9(b) and (n) of the rental agreement and on the basis of all the incidents noted in the "Interoffice Memorandum," the hearing board limited its consideration to only two incidents occurring after June 11, 1980, and proceeded only on the basis of the 9(n) violations. Appellants argue that the evidence is insufficient to support the finding that Appellants had violated paragraph 9(n). We disagree.

The evidence clearly shows that over a period of several years Appellants were given a number of notices of complaints made to management about the conduct of persons who were members of the Williams' household, in particular their sons, Happy and Tonny. Moreover, Appellants participated in several conferences and grievance hearings with management regarding their sons' actions. Appellants were also informed several times of their obligation to control the actions of such people under paragraph 9(n). In spite of those notices, two serious incidents occurred on the project premises involving Tonny and Happy separately. Both incidents were altercations, the last on June 19, 1981, involving Tonny, being a fatal stabbing. The letter of that same date followed this last incident.

In a letter dated October 2, 1980, following the first of those last two incidents, involving Happy, Appellants had been warned to correct the behavior and conduct of their family "immediately." The letter cited paragraph 9(n) of the agreement. The June 19, 1981 incident was evidence that Appellants had failed to comply with paragraph 9(n). Appellants have failed to convince us that

their eviction was unjust and unreasonable in its consequences under the circumstances.

Appellants argue that the evidence as to the origin of the first incident was conflicting. However, the evidence shows the incident did in fact occur. The question of its origin and the degree of participation by Appellants' household members was a matter of credibility, which was within the province of the hearing board. We cannot disturb the hearing board's findings. *Nani Koolau Co. v. K & M Construction,* 5 Haw. App. 137, 681 P.2d 580 (1984).

2.

Appellants' argument that: (1) the incidents were not related and could not be considered repeated violations of the rental agreement, and (2) the project management, under paragraph 11(n) of the agreement, was required to give Appellants a reasonable time within which to correct the default, is without merit.

Appellants were evicted not on account of the incidents *per se,* but because they failed to control the actions of their sons as evidenced by the long list of complaints, including the last two altercations.

The maintenance of harmony and order in the relations among the tenants of the project is important to its management and to the peace and well-being of all the tenants. Altercations among the tenants must be kept to a minimum. To further those considerations, paragraph 11(n) of the agreement gives the Authority flexibility to fix a time to correct violations of the agreement "commensurate with the exigencies of the situation." In view of the history of the actions of their sons, the requirement of the October 2, 1980 letter that Appellants correct the situation immediately was not unreasonable.

Appellants focus on the fact that the stabbing was unanticipated and argue therefore that they should not be evicted for their son's act because they were not afforded an opportunity to rectify it. The argument completely misses the point.

It is not the stabbing itself that is the basis of the eviction. Appellants were bound by paragraph 9(n) to control the actions of the family members living with them. They had been warned of their

obligation and the agency's authority to evict. The last incident was only the proverbial straw on the camel's back.

### 3.

Citing *Tyson v. New York City Housing Authority*, 369 F. Supp. 513 (S.D.N.Y. 1974), Appellants argue that evicting them for the acts of their adult sons violates constitutional due process. However, we do not find *Tyson* applicable. First, *Tyson* is merely the trial court's decision upholding the tenants' complaint against defendant's motion to dismiss for failure to state a claim. The decision was not on the merits of the claim. Second, the three families involved in *Tyson* were threatened with eviction on the basis of the actions of their adult children who were not members of their households at the time they committed their criminal acts, and in one instance the crime was committed off the premises. Here, the decision to evict came after a hearing and was based on the violent acts committed on the project premises by two sons, who were part of Appellants' household.

We are more persuaded by the case of *Spence v. Gormley*, 387 Mass. 258, 439 N.E.2d 741 (1982), cited in Appellants' reply brief. In *Spence*, judicial eviction proceedings were brought against two tenants for the on-premises violent acts of a resident son of each tenant. The appellate court affirmed the evictions. For our purposes, we find the appellate court's decision on the tenants' argument that evicting them for the actions of their sons was a violation of their due process rights to be applicable to Appellants' arguments here.

We stated in *Spence v. Reeder*, 382 Mass. 398, [421], Mass. Adv. Sh. (1981) 229, 252-53, 416 N.E.2d 914, that at least when a tenant knows or has reason to know of a household member's violent tendencies, "[t]he notion that interference with or threats to the rights of other tenants justifying eviction can only come from a signatory of the lease (or his or her minor children) is itself illogical. Surely, a public housing authority cannot be left helpless to rectify a serious threat to the safety of other tenants simply because the signatory of the lease happens not to be the source of the threat." Although we were concerned in

*Spence,* not with construction of a lease, but with general questions of fairness, our comments there are relevant to the likely intent of parties seeking to provide rationally for a means to curtail rampant violence in the housing projects.

*Spence v. Gormley,* 387 Mass. at 262, 439 N.E.2d at 744-45.

In the reply brief, Appellants rely upon *Spence* to support their argument that they should not have been evicted because they could not have foreseen their sons' violent acts. While it is correct that the Massachusetts court held that an awareness of the putative household member's potential for violence should be required, the court did not hold that it must be proved. The court in fact held that where household members are involved, awareness of and the ability to prevent potential problems may be inferred. Although the court was construing a statute prohibiting the Boston Housing Authority from evicting a tenant without "cause," we find the court's reasoning to be appropriate to the instant case.

When the wrongdoer is a household member, a fair inference exists that the tenant is aware of potential problems, and able to exercise some influence or otherwise prevent violent and destructive conduct on the premises. Problems of unfairness arise only because this may not hold true in every case. Accordingly, we understand the "cause" requirement of § 32 simply to mean that a tenant should not be evicted if special circumstances are present to negate the inference that she could have averted the lease violation. In other words, if the tenant can show that she could not have foreseen and prevented her son's violence, there is no "cause" to evict her within § 32.

*Id.* at 265, 439 N.E.2d at 746.

In the instant case, there is ample evidence in the record to support the inference. As in the *Spence* case, the evidence does not in any way "negate the inference of awareness of and ability to prevent violence." *Id.*

## APPEAL TO THE COMMISSION

Appellants argue that the appeal was improperly conducted in violation of HRS § 360-4 (1983 Supp.) because the commission did not review the proceedings of the hearing board.

The statute regarding such appeals, HRS § 360-4, reads as follows:

Appeal.　(a) Within five days after the issuance of an order under section 360-3 hereof, an appeal may be taken to the authority. The appeal shall be in writing and shall include new facts or evidence pertinent to the case which could not have been presented and were not available for presentation to the hearing examiner. The authority shall give written notice to the person concerned fixing the date and place of the appeal hearing. The notice shall be given at least five days before the date set for the hearing.

(b) The authority shall review the records of the hearing examiners and the new facts and evidence as submitted in the request for an appeal. The authority shall have the same powers in connection with such appeals as are provided for the hearing examiners in section 360-3, and the decision of the authority in the appeal shall be final.

Appellants' argument is completely without merit. The notice of appeal did not present any new facts or evidence for consideration by the commission and none was presented at the hearing. The commission chairman clearly stated that the commission's affirmance of the hearing board's decision was "based upon review of the record on appeal" and Appellants have pointed to nothing in the record to indicate otherwise.

## VAGUE AND OVERBROAD

Appellants cite *Tyson* to support their argument that paragraph 9(n) is vague and overbroad. As Authority points out, the *Tyson* court did not reach the vagueness or overbroad question. As noted above, the question in *Tyson* was the sufficiency of the complaint against a motion to dismiss. Appellants cite no other authority in support of their argument and we must assume there is none. The argument is without merit.

Affirmed.

*Robert Ling Sung Nip* for appellants.
*Lani Rae Suiso Garcia,* Deputy Attorney General, for appellee.