OPINION OF THE COURT
Helen E. Freedman, J.
In this CPLR article 78 proceeding, petitioner Jermaine Adams challenges the determination of the New York City Housing Authority (NYCHA or the Authority) to evict him from his home of 17 years because of his mother’s undesirable actions. Respondents oppose the application on the ground that Adams is not entitled to remain in his NYCHA apartment, even though he is the son of the former tenant of record, because his mother’s lease was terminated. Respondents also claim that the petition is time barred.
In October 1976, Lucille Adams signed a lease for apartment No. 3F at 3162 Bayview Avenue, Brooklyn, in the NYCHA Gravesend Houses (the Apartment). She lived there for 17 years without incident with her two children, Michelle and Jermaine, until, on March 16, 1993, she killed her lover in the Apartment. Michelle, who was present at the time, later moved out, but Jermaine, a Private First Class, United States Army Reserves who was temporarily stationed in North Korea, informed NYCHA through an employee on March 24, 1993 that he wished to remain in the Apartment.
Lucille Adams was incarcerated on Rikers Island soon after the incident, and is currently serving a 5-to-15-year sentence for manslaughter at Bedford Hills Correctional Facility. On April 5, 1993, while still at Rikers Island, she submitted NYCHA form 040.32F, a notice of intent to vacate, to the Authority, which stated her intention to surrender the Apartment, and asked that it be given to her son Jermaine Adams. Jermaine brought the letter to Michael Kranish, Gravesend *401 Houses building manager, who advised him, based on Kranish’s conversation with a NYCHA attorney, that if Jermaine made timely rental payments for three to four months, he would be granted a lease in his own name as a remaining family member, or at least given the opportunity to bring a grievance proceeding. On June 28, 1993, Karen Wojtaszek, Chief of the Landlord Attorney Division of NYCHA, calculated that Jermaine met the income criteria for NYCHA housing and determined that his rent would be lower than what Lucille’s had been. Ms. Wojtaszek also advised Kranish that Lucille Adams could file a notice to vacate, which had been done, and that thereafter NYCHA would give the apartment to Jermaine, or he could commence a remaining family member proceeding. Mr. Adams made timely rental payments during this period.
In October 1993, NYCHA sent form letters to Lucille Adams at her home address and on Rikers Island, advising her that her tenancy could be terminated and that she come in and speak with the project manager. On February 10, 1994, NYCHA sent a notice to the Apartment addressed only to Lucille Adams, advising her of a hearing to be held on March 8, 1994 to terminate her tenancy based on nondesirability. She was still incarcerated on March 8, when a default was taken and entered against her. NYCHA mailed a notification to Lucille of its determination to terminate her tenancy on April 8, 1994. No notice was sent to Jermaine Adams, who claims not to have known about the hearing until after the decision was rendered. In August 1994, NYCHA commenced a holdover proceeding against Lucille Adams in Civil Court, Kings County, neither naming nor serving Jermaine Adams. Appearing pro se before the court on August 18, 1994, Jermaine signed a stipulation on behalf of his mother, consenting to entry of a judgment of possession with a stay of eviction until December 31, 1994.
In January 1995, Mr. Adams retained the Legal Aid Society as counsel. On February 2, 1995 the Legal Aid Society requested that NYCHA reopen the default. The request was denied on March 24, 1995. Counsel now requests that this court reopen the termination of tenancy proceeding and vacate the decision, on the grounds that Lucille Adams had already vacated the Apartment and surrendered her right to it, and that Jermaine Adams, having met all the criteria set forth in the Federal regulations and NYCHA rules for "remaining family member status”, is entitled to a new lease. Petitioner contends that NYCHA’s determination to the contrary and its *402 refusal to process his claim are arbitrary and capricious, and violative of his due process rights.
Respondents oppose the application on the ground that Lucille Adams’ attempted surrender of the Apartment was a nullity, and that her tenancy was duly terminated for cause. Inasmuch as his mother’s rights to the Apartment were extinguished, respondents contend, under NYCHA regulations Jermaine has no succession rights as a remaining family member. As justification for this policy, respondents assert that allowing a family member of a former tenant of record, whose lease was terminated for nondesirability, to remain poses the danger that the undesirable person will return to the premises.
Federal regulations promulgated by the Department of Housing and Urban Development and NYCHA rules govern the definition of a "remaining family member”, the succession rights that flow therefrom, and the procedures for terminating tenancies. Under 24 CFR 966.53 (f) (2), a tenant is defined as an adult who has executed a lease and resides in the unit or one who resides in the unit and who is "the remaining head of household”. Pursuant to 24 CFR 966.52 and 966.53, a remaining head of household must be afforded "an opportunity for a hearing on a grievance” before being evicted. NYCHA’s own rules, as set forth in chapter VII, subdivision IV (E) (1) (a) of its Management Manual, define remaining family members, in relevant part, as "[pjersons who were member(s) of the original tenant family * * * and thereafter, remained in continuous occupancy up to and including the time the tenant of record moves or dies”. The NYCHA rules further provide that "[a]ny occupant who meets * * * these standards shall be deemed a 'remaining family member’. 'Remaining family members’ shall be offered [a NYCHA] lease if they are otherwise eligible for public housing”. (Id.) The regulations provide for a grievance procedure, under which a claimant who the Authority determines is not a remaining family member is entitled to a hearing to review denial if he or she makes a showing to substantiate such claim. (Management Manual, ch 7, subd IV [E] [1] [b] [3].)
NYCHA regulations also provide that certain claimants to remaining family member status are not entitled to a grievance, the relevant category being "any remaining occupant of an authority apartment at the time the tenancy is terminated, subsequent to the termination but prior to any eviction, when the tenant of record moves or dies.” (Management Manual, ch 7, subd IV [E] [1] [b] [4] [b].)
*403 With respect to terminations under 42 USC § 1437d (l) (5), a public housing authority must utilize leases which will "provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants * * * shall be cause for termination of tenancy”. Tenancies of those interfering with such rights must be terminated. (24 CFR 966.4 [11 [2] [ii] [A].)
However, the Federal regulations governing eviction for criminal activity give public housing authorities: "discretion to consider all of the circumstances of the case, including * * * the extent of participation by family members, and the effects that the eviction would have on family members not involved in the proscribed activity. In appropriate cases, the [public housing agency] may permit continued occupancy by remaining family members and may impose a condition that family members who engaged in the proscribed activity will not reside in the unit.” (24 CFR 966.4 [l] [5] [i].)
Respondents also invoke the Statute of Limitations set forth in CPLR 217 for challenging an administrative determination, and claim that this proceeding should have been commenced within four months of April 8, 1994, the date NYCHA mailed Lucille Adams the notice of its determination to terminate her tenancy. Inasmuch as this proceeding was not brought until February 16, 1995, respondents contend it is untimely.
Petitioner responds that the "termination of tenancy” proceeding, conducted 11 months after Lucille Adams’ "voluntary surrender” of the Apartment, was a "sham”, which only served to deprive petitioner of his rights to a lease or at least to pursue a grievance procedure. With respect to the Statute of Limitations claim, petitioner argues that NYCHA never actually determined petitioner’s claim to remaining family status or gave notice of such determination to petitioner, and thus the statute never began to run for his claim. He invokes the language of CPLR 217, which states that a "proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner”. Since respondents have refused to recognize petitioner as a remaining family member or offer a grievance opportunity, petitioner contends that no final determination has been made and the wrong is a continuing one. The determination on April 8, 1994, petitioner contends, only affected Lucille Adams’ rights. The Legal Aid Society’s subsequent request to reopen the hearing so as to allow Jermaine Adams to testify neither extended petitioner’s rights nor affected his claimed status as a remaining family member.
*404 DISCUSSION
Are the sins of the mother to be laid upon the son?* Respondents ask this court to uphold its determination that an otherwise deserving adult family member is not entitled to take over his mother’s lease, or even entitled to a hearing on his claim, because, and only because, his mother committed a single crime of passion. The facts of this case are unusual to the extent that the criminal acts were committed by the parent who was the named tenant, rather than the child, also a long-time tenant. However, the principle enunciated in Tyson v New York City Hous. Auth. (369 F Supp 513 [SD NY 1974]), that guilt by association is abhorrent to American jurisprudence, applies. In that seminal case, NYCHA threatened to evict the plaintiff tenants from their apartments because their adult children, who did not reside with them, had committed criminal acts both on and off the NYCHA premises. Plaintiffs sought injunctive and declaratory relief on the ground, among others, that NYCHA’s threatened evictions were unconstitutional. The court denied NYCHA’s motion to dismiss the constitutional claim for failure to state a cause of action, holding that: "Imposing criminal liability on a person on the basis of associations has long been regarded as constitutionally defective by our courts. This judicial aversion has arisen because guilt by association is antithetical to the concepts of personal guilt and individual responsibility which are touchstones of the Anglo-American system of law * * * This notion of personal guilt is not limited to criminal actions. Thus, the Supreme Court has struck down a state loyalty oath which, without any proof of individual responsibility for the alleged wrongful conduct, indiscriminately classified innocent along with guilty behavior solely because of associational relationship * * * Similarly, the forfeiture of a father’s truck used by his son in connection with criminal activity has been adjudged unconstitutional when the father was totally innocent of any wrongdoing * * * There must be some causal nexus between the imposition of the sanction of eviction and the plaintiffs’ own conduct.” (Tyson v New York City Hous. Auth., 369 F Supp, at 518-519, supra [citations omitted].)
In Tyson (supra), NYCHA stipulated to a consent judgment under which the parents retained their leases, but the offend *405 ing family members were permanently excluded from occupancy. Numerous subsequent cases have prohibited NYCHA from terminating tenancies where the conduct of persons (usually children) no longer residing at the premises is at issue. (E.g., Matter of Cabrera v New York City Hous. Auth., 187 AD2d 330 [1st Dept 1992]; Matter of Corchado v Popolizio, 171 AD2d 598 [1st Dept 1991] ["The forfeiture of a significant property interest involves substantial due process concerns”]; Matter of Brown v Popolizio, 166 AD2d 44 [1st Dept 1991]; Jones v Christian, 120 AD2d 367 [1st Dept 1986] [NYCHA determination modified to provide that remaining family members eligible for continued occupancy on condition that offender not reside there]; Matter of Hines v New York City Hous. Auth., 67 AD2d 1000, 1001 [2d Dept 1979] ["It would be shocking to one’s sense of fairness to terminate the tenancy of persons who have not committed nondesirable acts and have not controlled those who have committed such acts”]; Matter of Perry v Popolizio, NYLJ, Dec. 16, 1987, at 11, col 4, affd 146 AD2d 974 [1st Dept 1989].) The broad principle underlying these cases is that innocent public housing tenants, whose continued occupancy poses no threat to the community, should not be penalized for the nondesirable actions of nonresident family members over whom they had no control.
Respondents’ argument is that petitioner cannot claim remaining family member status under NYCHA rules because his mother’s tenancy had been terminated on the grounds of nondesirability. While apparently logical, this position does not bear scrutiny under the facts of this case. First, NYCHA’s employees acted so as to lull both Lucille and Jermaine Adams into believing that if Lucille relinquished her rights to the Apartment, then Jermaine would receive a lease in his own name. It was only after a change of heart, months after Jermaine’s rent had been recalculated and accepted, that NYCHA initiated termination proceedings against Lucille, without even informing Jermaine, the known, actual Apartment resident. The over-all course of NYCHA’s actions, including its failure to apprise Jermaine of its intent to terminate Lucille’s tenancy, operates as an estoppel against the Authority: it cannot ignore Lucille’s stated intent to vacate the Apartment in order to nullify Jermaine’s remaining family member claim.
Second, petitioner had lived in the Apartment for his mother’s entire 17-year tenancy. It is the home he grew up in and the only one he knows. Loss of a possessory interest in one’s home is a severe penalty which affords an individual a *406 cause of action. (United States v Premises Known as 281 Syosset Woodbury Rd., 791 F Supp 61, 62-63 [ED NY 1992]; see also, Matter of Corchado v Popolizio, 171 AD2d 598 [1st Dept 1991], supra.) A remaining family member’s succession rights are recognized for that reason.
Respondent’s argument that this case must be distinguished from Tyson v New York City Hous. Auth. (369 F Supp 513 [SD NY 1974], supra) and its progeny (cited above), merely because the offending household member was the tenant of record, as opposed to another family member, belies common sense. The same basic concerns articulated in Tyson, namely that innocent persons should not be penalized for the acts of other family members, are pertinent here. Followed to its logical conclusion, NYCHA’s argument would permanently ban Jermaine Adams from tenancy in any Authority housing, because his mother, who committed a single crime after 17 years as an exemplary tenant, might some day want to live with him. This would be true despite Mr. Adams’ blameless history as a responsible citizen who is serving his country and has never been in trouble with the law. This is an affront to basic concepts of personal responsibility.
While there is some similarity between the case at bar and Taylor v Hernandez-Pinero (Sup Ct, NY County, Dec. 15, 1992, Parness, J., index No. 402916/93), cited by respondents, the facts of Taylor were far less compelling, and the termination of tenancy proceedings were not clearly the afterthought that they were in the Lucille Adams case.
With respect to the Statute of Limitations, the court agrees that it bars reopening the termination of tenancy proceedings against Lucille Adams. However, the Statute of Limitations does not bar Jermaine from his claim to the Apartment lease as a remaining family member.
As respondents acknowledge, this case "is one in which the rules governing remaining-family-member claims overlap with those concerning non- desirable tenants.” (Respondents’ mem of law, at 5.) The court recognizes that NYCHA has broad discretion to administer its termination procedures to protect the safety of its tenants. That discretion, however, is not unfettered: it must not be exercised so arbitrarily and capriciously so as to constitute "an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.” (CPLR 7803 [3].) Under these particular circumstances, NYCHA’s refusal to grant Jermaine Adams a lease as a remaining family member before terminating Lucille Adams’ *407 lease is so shocking to basic notions of fairness as to constitute an abuse of discretion. Moreover, depriving Jermaine of the occupancy of the Apartment is an excessive penalty: NYCHA could protect its tenants by prohibiting Lucille Adams from ever residing in the Apartment again. That approach would be in keeping with the Federal regulations with respect to terminations. (24 CFR 966.4 [1] [5] [i].)
Accordingly, it is ordered and adjudged as follows:
The court directs that respondents accept Lucille Adams’ notice of intent to vacate dated April 5, 1993 as a surrender of the Apartment and grant Jermaine Adams a lease as a remaining family member as of that date, provided that Jermaine Adams is otherwise entitled to NYCHA public housing and that Lucille Adams is barred from any future residence at the Apartment or other NYCHA housing.
Settle judgment.

 "[T]he sins of the father are to be laid upon the children” (Shakespeare, Merchant of Venice, act III, scene 5, line 1);
"The gods visit the sins of the fathers upon the children.” (Euripides, Phritus, fragment 970.)