657 So.2d 552 (1995)
HOUSING AUTHORITY OF NEW ORLEANS
v.
Virgie GREEN.
No. 94-CA-1650.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1995.
Bernadette G. D'Souza, Robert R. Pebbles, Jr., Mark Moreau, New Orleans Legal Assistance Corp., New Orleans, for appellant.
Joseph A. Rome, Michael A. Starks, Housing Authority of New Orleans, New Orleans, for appellee.
Before KLEES, BYRNES, CIACCIO, PLOTKIN and LANDRIEU, JJ.
BYRNES, Judge.
The question in this case is whether a Housing Authority of New Orleans ("HANO") tenant may be evicted because a guest in her apartment had illegal drugs without her knowledge. The answer is yes.
This is an appeal from a trial court judgment granting the Rule for Possession filed by the Housing Authority of New Orleans, ("HANO"), thereby evicting appellant Virgie Green from the leased premises. Ms. Green suspensively appealed. We affirm.
Appellant, Virgie Green, leased a public housing apartment at 638 N. Prieur St. from HANO for approximately twelve years.
The illegal drugs found in Ms. Green's apartment belonged to Akisha Martin, an acquaintance of Ms. Green's daughter, who was not a member of the Green household. HANO did not prove that Ms. Green had any knowledge of the presence of the drugs in her apartment.
Akisha Martin testified that she brought the drugs into the apartment in the pocket of her pants inside the apartment. She spent the night in the master bedroom of the *553 apartment. The following evening, at approximately 8:00 p.m., she placed the drugs inside a closed shoebox in the closet in the bedroom while she took a bath. She testified that neither Ms. Green nor any of the other inhabitants of the apartment had any knowledge that she possessed the drugs either on her person or that the drugs had been placed inside the closet. According to the record, the drugs were apparently in the closet for less than one hour. Officer Felix Joseph testified that a confidential police informant purchased drugs from Akisha inside the apartment with money supplied by the police who had been notified of drug activity at that location by the informant. Akisha testified that she pled guilty to charges of possession and distribution of cocaine. From the record it is clear that Akisha made more than one isolated sale during the time in question.
Virgie Green testified that on the day drugs were discovered in her apartment, she left early that morning and did not return home until late that evening after Akisha had been arrested. Ms. Green stated that Akisha was a casual acquaintance of her daughter who seldom came to her apartment and never spent the night there before. Ms. Green stated that she had not slept in the master bedroom of the apartment for over five years. She testified that she had never seen Akisha with drugs, and was unaware that Akisha was involved in drug activity.
Ms. Green has been an exemplary tenant of the housing complex, and she served as a volunteer on the Resident Council Board for the complex. She attends the Business and Management School at HANO, which is where she was on the night Akisha was arrested.
At the outset we note that there is no constitutionally protected right to public housing. On May 9, 1994 HANO issued a Notice to Vacate to Ms. Green for an alleged lease violation. The reason stated by HANO for the notice to vacate was as follows:
On March 29, 1994, NOPD officers executed a search warrant at your home. The warrant was served at approximately 8:00 p.m. As the officers entered the apartment, they found four people who were detained. The officers then proceeded with a systematic search of your apartment. In the closet inside a "Fila" box, two plastic bags containing cocaine were found. The target of the investigation Akisha Martin was observed in the courtyard. She was arrested and charged with possession with intent to distribute a SCH II CDS to wit cocaine.
HANO argues that these activities violate several sections of Ms. Green's lease, the most significant being Section 15[1] of the lease which provides:
In accordance with the anti-drug abuse act of 1988 the following provision is included:
The tenant, any member of the tenant's household, or a guest or other person under the tenant's control shall not engage in criminal activity, including drug-related criminal activity, on or near the Housing Authority's premises, while the tenant is a tenant in public housing, and such criminal activity shall be cause of termination of tenancy. [Emphasis added.]
The term drug-related criminal activity means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use, of a controlled substance.
In ordering that Ms. Green be evicted the trial court assigned the following reasons for judgment:
The Court, after hearing the testimony of the witnesses and reviewing the pleadings and exhibits filed in the Record, is of the opinion that a Grievance Hearing was not necessary due to the nature of the violation and further the Plaintiff has adequately proved a violation of the lease and the Plaintiff is therefore entitled to a Judgment *554 of Eviction. There was Judgment rendered accordingly.
On appeal, Ms. Green contends that the trial court erred in evicting her under the circumstances of this case, where HANO failed to prove she had knowledge of the illegal drugs in her apartment or that she had control over the actions of her daughter's overnight guest, Akisha Martin. Ms. Green also argues that the circumstances presented here warrant an exercise of this Court's equitable discretion. In addition, Ms. Green contends that the trial court's eviction violated her due process rights. Ms. Green does not contest the legality of the search nor the existence of the drugs in her apartment.
HANO contends that under Section 15 of the lease provisions, Ms. Green was responsible for the criminal activity which took place inside of her public apartment, and such criminal activity was cause for termination of the lease.
Thus, where Section 15 of the lease refers to "a guest or other person under the tenant's control" it means that the tenant "controls" who has access to the premises. The lease makes the tenant responsible for the drug activities of those persons given access to the apartment by the tenant. "Control" as used in the lease in no way implies that the tenant knew or should have known of the drug activity, and there is no other provision in the lease that would make tenant knowledge of drug activity a necessary precondition of eviction. The most apt comparison is to the language of LSA-C.C. art. 2317 which imposes strict liability without fault or knowledge for "the things which we have in our custody."
The same "control" language is found in the federal Anti-Drug Abuse Act of 1988, as amended in 1990. 42 U.S.C.A. 1437d(l). Knowledge requirements in statutes are so common in general and so obviously relevant to this particular issue that we reject the argument that Congress either failed inadvertently to include a knowledge requirement, somehow included it by implication, or said "control" but really meant knowledge. That a Congressional committee may not have intended for tenant evictions to take place in the absence of knowledge, does not change the fact that when the Congress as a whole enacted this law it did so without the imposition of a knowledge requirement.
The cases cited by Ms. Green are all distinguishable. Chicago Housing Authority v. Rose, 203 Ill.App.3d 208, 148 Ill.Dec. 534, 560 N.E.2d 1131 (1 Dist.1990), involved a guest who used the public housing tenant's apartment for one night to conceal weapons without the tenant's knowledge. The lease in Rose required that the tenant not "permit" the apartment to be used for such purposes. The Rose court 148 Ill.Dec. at 539, 560 N.E.2d at 1136 observed: "In common usage, `permit' means `to consent to expressly or formally grant leave for or the privilege of...'". Therefore, the term "permit" necessarily implies knowledge.
In the instant case Section 15 of the lease contains no language that would imply knowledge such as "permit" or "consent." Ms. Green has failed to persuade this Court that the absence of such terms in her lease should be attributed to accident or oversight.
In Housing Authority of Decatur v. Brown, 180 Ga.App. 483, 349 S.E.2d 501 (1986), the tenant was evicted for personal possession of marijuana on one occasion and a drug raid that took place on another occasion. The lease defined proscribed activities in terms of how they impacted other tenants, much as Section 6D of Ms. Green's lease does. (See footnote one, supra.) The court noted that those persons arrested in the drug raid were in the apartment without the tenant's consent while he was in the hospital. Therefore, unlike Ms. Green the tenant in Brown could not be said to have had "control" over those persons who were involved in drug activities in his apartment.
As to the tenant's personal possession of marijuana in Brown the court noted 349 S.E.2d at 503:
"There is a conspicuous absence of any evidence that any neighbor of Brown [the tenant] complained of a threat to or experienced a lack of peaceable enjoyment of their accommodation. Likewise, there was no evidence that Brown [the tenant] had caused serious or repeated damage to the premises or that he created a physical hazard on the project. These are the only *555 stated grounds in the lease of "good cause" to justify the issuance of a notice of termination of the lease."
Unlike the lease in Brown, Section 15 of Ms. Green's lease effectively presumes the deleterious effects of drug activity on the premises and proof thereof is not required.
Tyson v. New York City Housing Authority, 369 F.Supp. 513 (S.D.N.Y.1974), was not a trial on the merits, but was only a motion to dismiss based on what in our practice would be exceptions of no cause of action and lack of subject matter jurisdiction. In Tyson the tenants were evicted as "nondesirable" because of the criminal acts of their major children who had not resided with them for some time prior to commission of the acts. The tenants also complained that the definition of "Non-Desirability" pursuant to which they were evicted was so vague and overbroad that it delegated an unconstitutionally unfettered discretion to the Housing Authority to determine what kind of conduct was prohibited and who should bear the consequences. No specific conduct was prohibited. Concomitant with the overbroad nature of the housing regulation in Tyson was its failure to give adequate warning of what conduct was prohibited which raises due process issues.
Ms. Green was not evicted for the acts of major children no longer residing with her. Moreover, had Ms. Green's lease contained only the broad prohibition against "any practices that will endanger or disturb other project residents" there might be a basis to complain that the concept "disturb" is so vague, broad, and subjective as to give HANO an unconstitutionally unfettered discretion to determine what kind of conduct is prohibited and who should bear the consequences. But that is not the case. The anti-drug language of Section 15 of Ms. Green's lease is clear and unambiguous. Tyson has no bearing on the instant case.
In argument it was suggested that Ms. Green is being discriminated against as a tenant of public housing thereby implying that she would be afforded greater protections had she had a lease with a private landlord. To the contrary, were we dealing with the same lease provision in a lease between private parties we could have affirmed the lower court in one short paragraph relying solely on the lease provision. Were this a lease between private parties it would have been a much simpler matter requiring no reference to Acts of Congress, Congressional intent, nor consideration of competing complex public policy issues. The sensitivity of this Court to Ms. Green's plight as a public housing tenant has caused this Court to deliberate the matter long and hard and resulted in a second hearing before a five judge panel.
HANO has the responsibility for maintaining a safe environment for its tenants who are being victimized by drug users and dealers. HANO in furtherance of its responsibilities has chosen to strictly enforce a zero tolerance approach to drugs on the premises. We do not find that policy to be unreasonable, nor do we find the lease provisions in question to be unlawful. For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
CIACCIO, J., dissents.
PLOTKIN, J., dissents for reasons assigned by CIACCIO, J.
CIACCIO, Judge, dissenting.
Because I disagree with the majority's conclusion that Virgie Green violated the terms of the HANO lease, I must dissent. In affirming the trial court's judgment of eviction, the majority relies on Section 15 of the lease agreement.
Section 15, which permits evictions for drug-related activity of guests under the tenant's control, was adopted pursuant to the Anti-Drug Abuse Act of 1988, as amended in 1990. The HANO lease expressly states that the provisions of Section 15 are in accordance with the Anti-Drug Abuse Act, and should therefore be construed with reference to the intent of the Act. This law as amended is codified in 42 U.S.C. 1437d(l) which provides in part:
Each public housing agency shall utilize leases which
* * * * * *

*556 (5) provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy
* * * * * *
(Emphasis added.)
The legislative history of the 1990 amendment to the Act provides that the public housing agency and the eviction court should exercise humane judgment in deciding whether to evict a tenant because of drug-related activity. Specifically, the congressional committee stated:
The committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane judgment by the PHA (public housing agency) and the eviction court. For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent this activity.
S.REP. NO. 316, 101st Cong., 2nd Sess. 179 (June 8, 1990), U.S.Code Cong. & Admin.News 1990, 5763, 5941.
As stated by the majority opinion, the illegal drugs found in Ms. Green's apartment belonged to Akisha Martin, an acquaintance of Ms. Green's daughter, who was not a member of the Green household. They were carried into Ms. Green's apartment in Akisha's pocket, and were placed for a short time in a shoebox in the apartment. The majority also acknowledges that HANO failed to prove that Ms. Green had knowledge of the presence of the drugs inside of her apartment. Akisha Martin testified that none of the inhabitants of the apartment knew of the presence of the drugs.
However, the majority then concludes that "control" as used in the Act and in the lease does not require actual or constructive knowledge by the tenant in order to support eviction proceedings. The majority finds nothing in the lease which would make tenant knowledge of drug activity a necessary precondition of eviction, referring to La.C.C. art. 2317 which imposes liability without fault or knowledge.
I disagree with the majority's interpretation of the terms of the lease. I fail to find that the provisions of the lease as modeled on the congressional statute intended to impose a type of strict liability wherein the tenant will be held responsible for all acts of criminal activity, regardless of the tenant's knowledge of or ability to control such activity. The tenant is not the guarantor of his or her guests. The mere presence of the offender in the leased premises does not necessarily imply control by the tenant. It is insufficient in all situations to state that because the guest engaged in criminal activity was in the apartment, the tenant exercised control over the guest.
Although I certainly acknowledge that HANO has a legitimate and important purpose in restricting the presence and sale of drugs within the public housing complex, I fail to find that under the particular facts of this case, the lease provisions require termination of Ms. Green's lease. The record is absolutely void of any evidence of fault on Ms. Green's part for the actions of Akisha Martin.
I find that as the lease requires the guest to be under the tenant's control to be a cause for termination of the lease, the housing authority must prove that the tenant either knew or should have known of the guest's criminal activity or in some way had control over the guest. Under the undisputed facts of this case, I find that Ms. Green had no knowledge of the presence of the drugs in her apartment or Akisha's alleged sale of drugs from her apartment. I also find no evidence in the record to show that Ms. Green should have known about this activity. This was a one-time incident which could not have been foreseen by Ms. Green. Under the circumstances presented here, I find that Ms. Green could not have prevented the criminal activity of her daughter's guest. Akisha was in no way under Ms. Green's control, and therefore Ms. Green cannot be held liable for Akisha's actions.
*557 Our system of justice has always required some degree of scienter before imposing a penalty for criminal actions. Although the cancellation of this lease and the eviction of Virgie Green is a civil penalty, the effect is just as devastating as a sentence for a criminal act. To do so in the absence of proof of any fault on the part of the defendant violates all of our concepts of fair play, equity and justice.
I conclude that the trial court was manifestly erroneous in rendering judgment in HANO's favor. On this basis, I would reverse the judgment of the trial court and render judgment in favor of Virgie Green, dismissing these proceedings against her.
PLOTKIN, Judge, dissents for the reasons assigned by CIACCIO, J.
NOTES
[1] HANO also alleged that Ms. Green violated Section 6, paragraphs C and D of the lease, which provide in part:

6. The tenant agrees:
C.... not to use the premises for any illegal or immoral activity.
D.... members of his/her household are prohibited from any practices that will endanger or disturb other project residents.