Opinion
FORCUM, J.
Facts
Respondent City of South San Francisco Housing Authority (Respondent) filed an action in San Mateo County Municipal Court on September 16, 1994, for unlawful detainer against appellants David and Ruth Guillory (Appellants). Appellants, their daughter, and a granddaughter presently reside in a federally subsidized apartment leased from Respondent. Appellants, as tenants, signed a lease for the period from November 1, 1993, through November 1, 1994. The lease was also signed by Appellants’ daughter and their son Phillip Guillory, who were listed as “household members.” Phillip Guillory lived in the unit with Appellants until August 1994.
On August 5, 1994, during a lawful search of Phillip’s personal belongings pursuant to the terms of his probation for a nondrug offense, the South *Supp. 16 San Francisco Police Department found four packets of narcotics in the pocket of a jacket in Phillip’s bedroom closet. Phillip was arrested and released on his own recognizance. Phillip moved out- of the unit at the insistence of Appellants, although they did not notify Respondent or request that Phillip’s name be removed from the lease.
Respondent initiated eviction proceedings against Appellants pursuant to a “zero tolerance” drug provision in the lease. This provision, which was signed by Appellants as tenants, and by their daughter and Phillip as household members, states in part: “. . . I understand and agree that this Housing Authority is a drug-free environment and that the Housing Authority has a policy of zero tolerance to drugs on these premises. I further understand and agree that policy entitles the Housing Authority to terminate the Lease of any Tenant family who has engaged in any drug-related activity, such as possession, sale, manufacture, distribution or use of a controlled substance on or about these premises . . . .”
In the notice of termination of tenancy issued to Appellants on August 11, 1994, Respondent stated that the grounds for termination were breaches of paragraphs ll(o) and ll(q) of the lease. Paragraph 11 (o) requires the tenant to, in part, “assure that the tenant, any member of the household, a guest, or another person under the tenant’s control, shall not engage in . . . (ii) [a]ny drug-related criminal activity on or near the premises. . . ,”[1]
On October 21, 1994, the parties entered a stipulation of facts, which included the following: “There is no evidence, however, that [Appellants] knew of, controlled, acquiesced in, or had reason to know of Phillip’s; possession of narcotics either in jail or in the apartment.” On October 26,. 1994, based on the stipulated facts, the trial court ordered that judgment be entered for Respondent, with enforcement conditionally stayed pending appeal. The court rule that Respondent “has established ‘good cause’ to terminate [Appellants’] tenancy based solely on the fact that narcotics were found in the apartment.” This appeal followed.
Discussion
Because the trial court reached its decision based on stipulated facts, the matters presented on this appeal are purely questions of law.
A lease between a housing authority and a tenant in California is a contract. Where the terms of the lease are clear and unambiguous, the terms *Supp. 17 of the contract must be enforced. (Medico-Dental Building Co. of Los Angeles v. Horton & Converse (1942) 21 Cal.2d 411, 418-419 [132 P.2d 457].)
In this case, Appellants signed a lease with the Respondent “to: assure” that the tenant and any member of the tenant’s household not engage in drug-related criminal activity at or near the premises. (Par. 1 l(o) of lease.) Appellants and Phillip Guillory signed and agreed to lease provisions that. established a policy of zero tolerance of drugs on the premises, and they agreed that Respondent could terminate the lease of any tenant family that engaged in any drug-related activity, which included possession of drugs. Appellants argue that no valid contract exists between them and Respondent, as paragraph ll(o) of the lease is ambiguous. This argument has no merit.
The language of the lease with respect to drug use and possession on public housing premises is clear and unambiguous. The terms of paragraph ll(o) of the lease have a plain and obvious meaning. By signing the lease with Respondent, Appellants agreed to assure that no drugs would be possessed or used on their premises by any member of their household. There is no ambiguity in what Appellants were obligated to do, particularly when paragraph ll(o) of the lease is read in conjunction with the other lease provisions which also clearly and explicitly prohibit drug-related activity. • The lease between Appellants and Respondent is therefore a valid contract. . The facts as stipulated in the court below demonstrate Appellants violated that contract. Respondent, acting pursuant to the contract, acted within its : lawful authority in enforcing the contract by evicting Appellants.[2]
Appellants make a statutory argument that the eviction here is in violation of California Health and Safety Code section 34331, subdivision (a).
Health and Safety Code section 34331, subdivision (a) requires that a housing authority have reasonable cause before a tenant is evicted. Citing a number of out of state authorities, Appellants argue that the reasonable cause standard is equivalent to a good cause standard, and good cause requires a showing of knowledge or that the evicted tenant had reason to know of a family member’s illegal conduct. (See, e.g., Diversified Realty Group v. Davis (1993) 257 Ill.App.3d 417 [195 Ill.Dec. 617, 628 N.E.2d 1081].)
The stipulated facts establish that Respondent is an agency that receives federal funding. Title 42 United States Code section 1437d(l) requires that each public housing agency shall utilize leases which—
*Supp. 18 “(4) require that the public housing agency may not terminate the tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause;
“(5) provide that any criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a public housing tenant, any member of the tenant’s household, or any guest or other person under the tenant’s control, shall be cause for termination of tenan-
The effect of the language of 42 United States Code section 1437d(/)(5) is that any drug-related criminal activity on or near public housing premises engaged in by any member of the tenant’s household is cause for termination of tenancy.
In developing rules to implement this statute, the Department of Housing and Urban Development (HUD) specifically cited congressional concerns about drug crimes and the threat to the safety of public housing residents which drug crimes present. HUD concluded: “The Congress has determined that drug crime and criminal threats by public housing household members are a special danger to the security and general benefit of public housing residents warranting special mention in the law. (U.S.H. Act, section 6(1)(5), 42 U.S.C. 1437d(l)(5).) For this reason, the Congress specified that these types of criminal activity by household members are grounds for termination of tenancy without the need for a separate inquiry as to whether such criminal activity constitutes serious or repeated lease violation or other good cause for eviction." (56 Fed.Reg. 51566-51567 (Oct. 11, 1991).)
Pursuant to 24 Code of Federal Regulations section 966.4(f) (1995), HUD requires that public housing tenants are obligated—
“(12)(i) To assure that the tenant, any member of the household, a guest, or another person under the tenant’s control, shall not engage in:
“(A) Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the PHA’s public housing premises by other residents or employees of the PHA, or
“(B) Any drug-related criminal activity on or near such premises.
“Any criminal activity in violation of the preceding sentence shall be cause for termination of tenancy, and for eviction from the unit.”
*Supp. 19 By requiring that each public housing lease contain language setting forth that drug-related activity by any member of a tenant’s household is cause for an eviction, Congress enacted a straightforward practical method of dealing with a serious public safety problem.
Appellants’ argument that the state law is controlling is without merit. The standard for eviction in a public housing project which receives federal funding is a matter of federal, not state, law. Accordingly, 42 United States Code section 1437d(l)(5) preempts Health and Safety Code section 34331, subdivision (a). Under the supremacy clause, state laws that interfere with, or are contrary to, laws of Congress made in pursuance of the Constitution are preempted. (Gibbons v. Ogden (1824) 22 U.S. (9 Wheat.) 1 [6 L.Ed. 23].) In determining whether a state law is preempted, the courts must first consider congressional intent. (Wisconsin Public Intervenor v. Mortier (1991) 501 U.S. 597 [115 L.Ed.2d 532, 111 S.Ct. 2476].) Congress may explicitly state its intent to preempt state law by the terms of the statute itself. (Jones v. Rath Packing Co. (1977) 430 U.S. 519, 525 [51 L.Ed.2d 604, 613, 97 S.Ct. 1305].) However, absent explicit preemptive language, the courts must look to see if preemption should be implied from a scheme of federal regulation that is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it. (Wisconsin Public Intervenor v. Mortier, supra, 501 U.S. at p. 605 [115 L.Ed.2d at pp. 542-543].)
Even when Congress has not chosen to occupy a particular field, preemption may occur to the extent that state and federal law actually conflict. Such a conflict arises when compliance with both federal and state law is a physical impossibility (Florida Avocado Growers v. Paul (1963) 373 U.S. 132, 142-143 [10 L.Ed.2d 248, 256-257, 83 S.Ct. 1210]), or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. (Hines v. Davidowitz (1941) 312 U.S. 52, 67 [85 L.Ed. 581, 587, 61 S.Ct. 399]; Jones v. Rath Packing Co., supra, 430 U.S. at p. 526 [51 L.Ed.2d at pp. 614-615]).
In this case, any interpretation of Health and Safety Code section 34331, subdivision (a), providing a reasonable cause standard for eviction that is inconsistent with the cause provisions set out in 42 United States Code section 1437d(l)(5) and 24 Code of Federal Regulations section 966.4 (f)(12) is preempted. Accordingly, drug-related activity by any member of a tenant household is cause per se for termination of the lease where, as here, the housing authority receives federal funds.
Appellants further contend that 42 United States Code section 1437d(Z)(5) and the above described HUD regulations which implement the federal *Supp. 20 statute, 24 Code of Federal Regulations section 966.4(f)(12) are unconstitutional as applied to Appellants. Appellants assert that their eviction is constitutionally infirm as there is no evidence that they knew or had reason to know of their son Phillip Guillory’s illegal conduct.
Appellants’ argument rests primarily on a substantive due process argument that before a tenant is evicted he or she must have knowledge or the ability to foresee another family member’s criminal conduct. Thus, Appellants argue the Constitution protects individuals against punishment without personal guilt, citing Tyson v. New York City Housing Authority (S.D.N.Y. 1974) 369 F.Supp. 513, 518. Tyson is not controlling here. The facts of that case are readily distinguishable from the facts of this case. In Tyson the evictions in question were based on the conduct of an adult child not living in the tenant’s household. Here Phillip Guillory lived with his family and had notice of the lease provisions pertaining to drug-related activity. Moreover, Appellants’ argument overlooks the fact that David and Ruth Guillory were evicted for failure to assure that no drug-related criminal activity occur in their premises. Appellants were not evicted for the conduct of Phillip Guillory. The eviction was based on their failure to assure that illegal drug-related conduct did not take place in their household. Thus, Chavez v. Housing Authority of City of El Paso (5th Cir. 1992) 973 F.2d 1245, 1249 is controlling here, and the eviction of Appellants does not violate any constitutional rights. The judgment of the lower court is affirmed.
Kemp, P. J., and Kozloski, J., concurred.

Paragraph 11(q) requires the tenant “to refrain from illegal or other activity which impairs the physical or social environment of the project.” Paragraph 11(q) is not applicable to the issues presented in this appeal.

Appellants argue that their eviction is inequitable, citing McNeece v. Wood (1928) 204 Cal. 280, 284-285 [267 P. 877]. McNeece is completely distinguishable on its facts and is not controlling here.