*255 OPINION OF THE COURT
Jeffrey R. Merrill, J.
This is a holdover proceeding whereby the petitioner seeks to recover possession of premises located at 362 Taft Avenue, apartment 47, Syracuse, New York. The premises is operated under the auspices of the Syracuse Housing Authority, a public housing authority. It is the petitioner’s contention that the respondent tenant has violated the terms of her lease by permitting a guest to engage in drug-related activity on the property. The respondent has adamantly opposed the petition.
The parties waived their right to a hearing and stipulated to the following facts: respondent Ann M. Boule is a tenant residing at the subject premises with her two minor children. On May 3, 1996 respondent’s usual babysitter became unexpectedly unavailable and, being pressed for time, respondent asked the child’s father, Melvin Troutman, to care for the child that day. Respondent did not want to jeopardize her job by failing to go to work for lack of child care. Respondent left the child in Mr. Troutman’s care at her apartment while she went to work. Later that day unbeknownst to respondent, and while she was still at work, Mr. Troutman and two of his friends were arrested for possessing and selling illicit drugs out of respondent’s apartment.
The following further facts are stipulated: respondent did not know Mr. Troutman had invited the other two persons upon the premises and she did not give permission for them to be present; none of the three persons arrested reside at the apartment; respondent was unaware of the presence or sale of the drugs on the premises; respondent was not in any way involved in the possession or sale of the drugs; respondent was not criminally charged regarding this incident; respondent believed that Mr. Troutman did not have a criminal record; and neither neighbors nor the Housing Authority notified respondent of the criminal activity during its occurrence.
The parties entered into a lease for the premises on November 2, 1995 for a term commencing on November 1, 1995 and expiring on June 30, 1996. Paragraph II (B) (10) of the lease provides, in part, that the tenant shall cause her "guests, persons at the Apartment and other persons on the Premises under Tenant’s control to refrain from engaging in criminal activity, including drug-related criminal activity, on or near the Apartment, the Premises or any SHA development”. Although not expressly set forth in the lease, a violation of this *256 provision is cause for termination of the tenancy and eviction (24 CFR 966.4 [f\ [12] [i] [B]; 42 USC § 1437d [Z] [5]). Paragraph V (B) (4) (a) does provide for the lease to expire for "good cause, including but not limited to, objectionable conduct of * * * Tenant’s guests”.
It is petitioner’s position that respondent has an affirmative duty under the terms of the lease to prevent her guests from engaging in drug-related criminal activity, that this duty is clear and absolute and that she breached this duty. Petitioner contends that respondent’s lack of knowledge of, and lack of participation in, the drug activity is irrelevant. Further, by failing to investigate the backgrounds of her guests and failing to supervise and control them, respondent allowed them to sell crack cocaine from her apartment, petitioner posits.
Respondent rejects petitioner’s strict liability approach as unconstitutional and unwarranted by the applicable statutory and regulatory provisions. Instead, respondent contends that she cannot be evicted without a showing that she had knowledge of the drug activity or that she permitted the activity or that she acquiesced to the activity. This would require a finding, respondent claims, that the drug activity was foreseeable by respondent and that she failed to take steps to prevent the activity from occurring.
Petitioner cited City of S. San Francisco Hous. Auth. v Guillory (41 Cal App 4th Supp 13, 49 Cal Rptr 2d 367) in support of its position. In that case the tenants were evicted when narcotics were found in their son’s bedroom despite a lack of evidence that they knew of or had reason to know of their son’s possession of drugs. The court held that drug-related activity by any member of the tenant household is cause per se for termination of the lease. However, unlike the instant proceeding, Guillory involved a clear and unambiguous lease provision expressly providing for termination under such circumstances. The lease provides as follows: " T understand and agree that this Housing Authority is a drug-free environment and that the Housing Authority has a policy of zero tolerance to drugs on these premises. I further understand and agree that policy entitles the Housing Authority to terminate the Lease of any Tenant family who has engaged in any drug-related activity * * * on or about these premises’ ” (Supra, 41 Cal App 4th Supp, at 16, 49 Cal Rptr 2d, at 369).
Petitioner also cited Minneapolis Pub. Hous. Auth. v Holloway (1995 WL 479653 [Minn Ct App, Aug. 15, 1995, Holtan, J.]). In that case the tenant left the apartment and her chil *257 dren in the care of her nephew for three or four weeks. In her absence her nephew’s conduct resulted in property damage and a shooting. The tenant’s argument that she should not be held responsible for events that she could not foresee, prevent or control was rejected by the court. The court determined that foreseeability of incidents is not the eviction standard for public housing and simply declared that a tenant is responsible for the acts of family members and guests.
Respondent has cited cases holding contrary to petitioner’s case. In Matter of Stroman v Franco (NYLJ, Apr. 24, 1996, at 25, col 5 [Sup Ct, NY County]) a public housing tenant’s tenancy was terminated by the housing authority, after a hearing, due to the criminal activity of her son. The son was not a resident of the apartment. The court annulled the administrative determination finding that the penalty of termination was unduly harsh. Instead of applying a strict liability test, the court applied a balancing test, stating that the housing authority’s legitimate interest in maintaining a drug-free environment must be balanced with fairness toward an innocent family.
Charlotte Hous. Auth. v Patterson (120 NC App 552, 464 SE2d 68), also relied upon by respondent, involved the housing authority’s decision to terminate tenant’s lease based upon the criminal activity of the tenant’s son who was a member of the household. Specifically, the son shot two people with a pistol, killing one of them. The trial court made findings of fact, including: that the tenant had no knowledge of the shooting until after the incident; the gun was not left in the subject apartment and it did not belong to anyone in the household; the tenant had no reason to know her son would shoot someone; and the tenant was not personally at fault for the shooting by her son. Based upon the foregoing, the trial court dismissed the eviction complaint for failure to establish good cause to terminate the lease. The case was appealed and the Court of Appeals of North Carolina affirmed, stating that "the trial court was correct in concluding that under 42 U.S.C. § 1437d(l)(5) a public housing tenant may not be evicted when she was not personally at fault for a breach of the lease by a member of her household.” (Supra, 120 NC App, at 555, 464 SE2d, at 71.) Said paragraph of the USC provides as follows:
"Each public housing agency shall utilize leases which * * *
"(5) provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or *258 near such premises, engaged in by a public housing tenant, any member of the tenant’s household, or any guest or other person under the tenant’s control, shall be cause for termination of tenancy”. (42 USC § 1437d [Z] [5].)
The Court of Appeals of North Carolina concluded that Congress did not intend that the subject statute impose strict liability upon tenants for all criminal activity irrespective of their knowledge of or ability to control the acts. The court reached this conclusion upon review of the applicable expressed legislative intent. The court cited the congressional committee’s report that accompanied the 1990 amendment to 42 USC § 1437d (Z) (5): "This Section would make it clear that criminal activity, including drug related criminal activity, can be cause for eviction only if it adversely affects the health, safety, and quiet enjoyment of the premises. The Committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane judgment by the PHA and the eviction court. For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity. S.Rep. No. 316, 101st Cong., 2d Sess. 179 (1990)”. (Charlotte Hous. Auth. v Patterson, supra, 120 NC App, at 556-557, 464 SE2d, at 71-72.)
This court concurs with the reasoning of the Court of Appeals of North Carolina. The court finds the legislative intent to be an inescapable directive since the paramount consideration in statutory construction is to ascertain and give effect to legislative intent (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a]). Such intent must initially be determined by a literal reading of the words in the statute itself (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b]; § 94; see, Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 479-480). A literal reading of 42 USC § 1437d (Z) (5) provides for termination of the tenancy where a guest of a tenant has engaged in drug-related criminal activity on or near the premises regardless of fault. However, legislative intent prevails over the strict letter of a statute (Sanders v Winship, 57 NY2d 391, 396). Courts are not bound to blindly construe statutes or regulations in a manner contrary to legislative intent with unreasonable, absurd or unexpected results (see, Matter of Chatlos v McGoldrick, 302 NY 380, 387-388; Matter of Friedman-Kien v City of New York, 92 AD2d 827, affd 61 NY2d 923; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 92, 143, 145, 148). In the instant proceeding a lit *259 eral reading of the statute is clearly contrary to congressional intent.
Both parties have made reference in their memorandums to the United States Department of Housing and Urban Development’s "One Strike and You’re Out” statement of policy in public housing issued in March of 1996. The avowed public housing goal of providing safe, healthy residential environments for law-abiding families is beyond reproach. To achieve this goal the policy statement encourages public housing authorities to enforce their lease provisions on a more strict basis in order to remove criminal elements. However, the policy statement further declares on pages 8 and 9: "PHAs retain the flexibility to handle these cases on an individualized basis, and they should exercise reasonable discretion in light of all the relevant circumstances. In particular, when a tenant has taken all reasonable steps to prevent the criminal activity, eviction may not always be warranted or proper. To ensure both humane results and success in court, PHAs should undertake a case-by-case analysis before proceeding with eviction. If they do seek eviction, PHAs should be prepared to persuade a court that eviction is justified.”
This language is not indicative of a policy of strict liability. Instead, it directs the utilization of discretion, a consideration of the circumstances of the matter on a case-by-case basis and a humane disposition of the case.
Given the stipulated facts presented to the court it is clear that the respondent did not know of the drug activity, she did not consent to it and, under the circumstances, she had no basis upon which to foresee the drug activity. Thus, she was not personally at fault for the breach of the lease.
This court holds that where, as herein, a public housing tenant is not personally at fault for the drug-related criminal activity of a guest, good cause for termination of the lease and eviction does not exist.
The petition is dismissed.