OPINION OF THE COURT
J. Kevin Mulroy, J.
This is an appeal from a decision/order of the Syracuse City Court, dated December 23, 1996 (172 Misc 2d 254), dismissing the petitioner-appellant’s petition for recovery of real property from respondent, a public housing tenant. The stipulated facts are that on May 3, 1995, the respondent’s usual babysitter became unavailable and the respondent asked the father of her child to come to the premises which are the subject of the peti *401 tion in order to care for the child while respondent worked. While respondent was at work, respondent’s child’s father invited two other people to the premises and they sold drugs from the premises and, as a result, were arrested. Petitioner, citing (among other cases) City of S. San Francisco Hous. Auth. v Guillory (49 Cal Rptr 2d 367, 41 Cal App 4th Supp 13) and Minneapolis Pub. Hous. Auth. v Holloway (1995 Minn App LEXIS 1028 [Minn Ct App, Aug. 15, 1995, Holtan, J.]), contends that a tenant can be evicted from public housing based on conduct which a tenant cannot reasonably foresee, prevent or control. The lower court disagreed, holding that when a public housing tenant is not personally at fault for the drug-related criminal activity of a guest, good cause for termination of the lease and eviction does not exist. Petitioner appeals from that determination.
Initially it should be noted, although apparently not within the petitioner’s scope of concern, this court finds that the result reached in the lower court is the only fair and just result under the circumstances present in this case. Furthermore, although the petitioner objected to the fact that the lower court failed to distinguish Guillory and Holloway (supra) from the instant case, this court believes that they are distinguishable.
The Guillory decision involved tenants who were evicted “for failure to assure that no drug-related criminal activity occur [red] in their premises” (City of S. San Francisco Hous. Auth. v Guillory, 49 Cal Rptr 2d, at 372, 41 Cal App 4th Supp, at 20, supra). The court noted that the son lived with the respondents tenants and had notice of the lease provisions. Because the son lived with the tenants they had an opportunity to assure that no drug-related activity occurred and the son also had personal awareness of the lease provisions. Therefore there was personal fault on the part of a member of the household and, because the son was a member of the household, there was an opportunity to assure that his conduct comported with the lease provisions. The “failure to assure” is, in fact, a “fault standard.”
The instant case, involving a babysitting “emergency” requiring the tenant to invite in a guest who was not present on a day-to-day basis (which would allow her an opportunity to “assure” that there was no drug activity), is therefore distinguishable from Guillory (supra).
Holloway (supra) is also distinguishable in that it involved a course of activity over a period of time. Holloway involved numerous serious incidents (such as a drive-by shooting and a *402 fire-bombing). The tenant left the premises in the care of a 25 year old while she was out of town for three or four weeks. Although the Holloway decision states that the eviction standard does not ask “whether the tenant could ‘reasonably foresee, prevent, or control’ ” (at *3) the incidents leading to eviction, but states, rather, that the tenant is responsible for the acts of family and guests, the Holloway decision, immediately thereafter, refers to the fact that serious or repeated violations of the lease are grounds for termination. Holloway, in fact, found that eviction would have been warranted using a “fault” standard. It is highly doubtful that if the eviction of Holloway had been sought after a single incident that the outcome would have been the same.
Under the standard urged by petitioner-appellant, a tenant who called an appliance repairman to the premises could be evicted from the premises if the repairman were found to be in possession of a single marihuana cigarette, even if the tenant had run a criminal background check on him and found no indication of any drug-related problems. Apparently the petitioner herein would also require a strip search before the repairman was allowed on the premises.
While the zero tolerance of drugs and drug-related activity is a laudable goal for public housing, the attempt to evict the tenant under these circumstances, where there is no “fault” attributed to the tenant, evidences the need for the balancing test approach used in Matter of Stroman v Franco (NYLJ, Apr. 24, 1996, at 25, col 5 [Sup Ct, NY County]), as opposed to the strict liability standard which the petitioner seeks to have the court adopt.
Based on the foregoing, the decision of the lower court is affirmed in its entirety.