**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT JACKSON**

**FILED**

**July 29, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **MEMPHIS HOUSING AUTHORITY**, | ) | Shelby County Circuit Court |
|  | ) | No. 94425 T.D. |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9812-CV-00356 |
|  | ) |  |
| **TARA THOMPSON**, | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

From the Circuit Court of Shelby County at Memphis.
**Honorable Robert A. Lanier, Judge**

**Brenda Oates-Williams**,
MEMPHIS AREA LEGAL SERVICES, INC., Memphis, Tennessee
Attorney for Defendant/Appellant.

**Gregory L. Perry**, Memphis, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

In this unlawful detainer action, Defendant Tara Thompson appeals the trial court's judgment granting the motion for summary judgment filed by Plaintiff/Appellee Memphis Housing Authority (MHA) and issuing a writ of possession in favor of MHA. We affirm the trial court's judgment based upon our conclusion that MHA properly terminated Thompson's lease after she violated the lease provisions by failing to cause one of her guests to refrain from engaging in drug-related criminal activity in her apartment.

MHA is a public housing authority within the meaning of the United States Housing Act. *See* 42 U.S.C.A. §§ 1437--1440 (West 1994 & Supp. 1999). MHA receives much of its funding through a subsidy from the United States Department of Housing and Urban Development (HUD), and its operation is governed by federal law and by HUD rules and regulations.

In 1988 and again in 1990, the United States Congress amended the Housing Act to address the problem of illegal drug activity and other criminal activity on public housing premises. As amended, the Act required public housing authorities to use leases which provided that

> any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.

42 U.S.C.A. § 1437d(l)(5) (West 1994). Congress again amended the Act in 1996 to refer to any drug-related criminal activity "on or *off* such premises" rather than "on or *near* such premises." 42 U.S.C.A. § 1437d(l)(6) (West Supp. 1999) (emphases added).

Pursuant to Congress's directive, MHA required its public housing residents to sign lease agreements containing the following provisions:

> 7.    OBLIGATIONS OF RESIDENT
> Resident Agrees:
>
> . . . .

M.     To refrain from illegal or other activity which impairs the physical or social environment of the development, and cause other persons who are on the premises with the resident's consent to refrain from illegal or other activity which impairs the physical or social environment of the development or interferes with the health, safety or right of peaceful enjoyment of the premises by other residents.

N.     To refrain from and cause household members, guests or persons under the resident's control [to refrain] from engaging in any criminal activity or unlawful activity that threatens the health, safety or right to a peaceful enjoyment of [MHA's] public housing premises by other residents or employees of [MHA] which includes but is not limited to any drug related criminal activity on or off the premises;

. . . .

15.     TERMINATION OF THE LEASE

Management shall not terminate or refuse to renew the lease other than for serious or repeated violations of the material terms of the lease, . . . such as failure to make payment due under the lease or to fulfill the resident's obligations set forth in Section 7, or for other good cause. The resident agrees that the violation of any of the obligation of residents A thru W is a serious violation of a material term of the lease, and is good cause for termination of the lease.

Either of the following types of criminal activity by the resident; any members of the household, a guest, or other person under the resident's control, shall be cause for termination of tenancy and such termination shall be excluded from resident's right to a grievance hearing.

A.     Any criminal activity or unlawful activity that threatens the health, safety or right to peaceful enjoyment of the premises of the residents or employees of [MHA].

B.     Any drug related criminal activity on or off the premises or alcohol abuse which interferes with the health, safety or right to peaceful enjoyment of the resident. The resident agrees that any drug related criminal activity on or off the premises interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents and is not conducive to maintaining [MHA] Public Housing Development in a decent, safe, sanitary and crime-free environment and creates a threat to the health and safety of other residents.

Tara Thompson and her three children live in MHA's Fowler Homes Housing Development. In order to obtain housing in Fowler Homes, Thompson signed a Dwelling Lease and Lease Addendum with MHA that contained the foregoing provisions.

On February 6, 1998, Thompson saw Tallen Williams, the father of her youngest child, "hanging out" at Fowler Homes. At Thompson's request, Williams agreed to go to

Thompson's apartment to watch her children while she went to do laundry. While Williams was in Thompson's apartment, officers of the Memphis Police Department, acting pursuant to a search warrant, raided the apartment, found 0.4 grams of cocaine in Williams' possession, and arrested him.

Thompson had no prior knowledge of Williams' illegal drug activity. Thompson knew that Williams had been jailed in December 1997 for violating the terms of his probation, but Thompson did not know the nature of the underlying offense for which Williams was serving probation. Thompson did not ask Williams why he was on probation, and Williams did not volunteer this information.

Despite Thompson's lack of prior knowledge of Williams' illegal drug activity, MHA notified Thompson that it was terminating her lease based upon her violation of the lease provisions prohibiting drug-related criminal activity on the premises. When Thompson failed to vacate the apartment, MHA brought this unlawful detainer action against her.

This action initially was tried in the General Sessions Court, where a judgment for possession was entered in favor of MHA. After Thompson appealed the judgment to the Circuit Court, MHA moved for summary judgment, contending that, as a matter of law, it was entitled to terminate Thompson's lease based upon her violation of the lease provisions prohibiting drug-related criminal activity on the premises. The trial court initially denied MHA's motion; however, upon MHA's motion for reconsideration, the trial court granted MHA's motion for summary judgment and issued a writ of possession in favor of MHA.

On appeal, Thompson contends that the trial court erred in entering a judgment in favor of MHA when the record contained no evidence that Thompson was at fault in allowing Williams to possess illegal drugs in her apartment. Specifically, Thompson asserts that the record contained no evidence that she either knew about Williams' illegal drug activity or had the ability to control Williams' conduct.

We conclude that this argument lacks merit. In construing similar lease provisions, courts in other jurisdictions have ruled that a public housing authority may evict a tenant without

presenting proof that the tenant knew of or had the ability to foresee or control the illegal activity of a household member or guest. In *City of South San Francisco Housing Authority v. Guillory*, 49 Cal. Rptr. 2d 367, 369 (Cal. App. Dep't Super. Ct. 1995), the lease provision at issue required the tenants to "assure that the tenant, any member of the household, a guest, or another person under the tenant's control, shall not engage in . . . [a]ny drug-related criminal activity on or near the premises." Citing this provision, the housing authority filed an unlawful detainer action against the tenants after a lawful search of their apartment revealed narcotics in their son's bedroom. In pursuing its unlawful detainer action, the housing authority stipulated that it could produce no evidence that the tenants "knew of, controlled, acquiesced in, or had reason to know" of their son's possession of narcotics. *Guillory*, 49 Cal. Rptr. 2d at 369. Despite this stipulation, the trial court entered a judgment for the housing authority, ruling that it properly terminated the tenants' lease "based solely on the fact that narcotics were found in the apartment." *Id*. at 370.

In affirming the trial court's judgment, the appellate court first rejected the tenants' argument that the subject lease provision was ambiguous:

> This argument has no merit.
>
> The language of the lease with respect to drug use and possession on public housing premises is clear and unambiguous. The terms of paragraph 11(o) of the lease have a plain and obvious meaning. By signing the lease with [the housing authority], [the tenants] agreed to assure that no drugs would be possessed or used on their premises by any member of their household. There is no ambiguity in what [the tenants] were obligated to do, particularly when paragraph 11(o) of the lease is read in conjunction with the other lease provisions which also clearly and explicitly prohibit drug-related activity. The lease between [the tenants] and [the housing authority] is therefore a valid contract. The facts as stipulated in the court below demonstrate [the tenants] violated that contract. [The housing authority], acting pursuant to the contract, acted within its lawful authority in enforcing the contract by evicting [the tenants].

*Guillory*, 49 Cal. Rptr. 2d at 370. The appellate court also rejected the tenants' argument that they could not be evicted unless they had knowledge of or the ability to foresee their son's criminal conduct:

> [The tenants'] argument overlooks the fact that [they] were evicted
> for failure to assure that no drug-related criminal activity occur in

their premises. [The tenants] were not evicted for the conduct of [their son]. The eviction was based on [the tenants'] failure to assure that illegal drug-related conduct did not take place in their household.

*Id*. at 372.

In *Housing Authority of New Orleans v. Green*, 657 So. 2d 552, 553 (La. Ct. App.), *writ denied*, 661 So. 2d 1355 (La. 1995), *cert. denied*, 517 U.S. 1169 (1996), the lease provision at issue prohibited the tenant, any member of the tenant's household, or a guest or other person under the tenant's control from engaging in criminal activity, including drug-related criminal activity, on or near the housing authority's premises. The housing authority brought eviction proceedings against the tenant after illegal drugs were found in her apartment. The proof at trial established that the drugs belonged to an acquaintance of the tenant's daughter. Although the housing authority did not prove that the tenant had any knowledge of the presence of the drugs in her apartment, the trial court entered a judgment evicting the tenant.

The appellate court affirmed the trial court's judgment of eviction, specifically rejecting the tenant's argument that the trial court erred in evicting her when the housing authority failed to prove that she had knowledge of the illegal drugs in her apartment or that she had control over the actions of her daughter's acquaintance. As did the *Guillory* court, the appellate court found the lease provision's anti-drug language to be "clear and unambiguous." *Green*, 657 So. 2d at 555. Upon examining this and other lease provisions, the court concluded that the lease contained no knowledge requirement:

> [W]here Section 15 of the lease refers to "a guest or other person under the tenant's control" it means that the tenant "controls" who has access to the premises. The lease makes the tenant responsible for the drug activities of those persons given access to the apartment by the tenant. "Control" as used in the lease in no way implies that the tenant knew or should have known of the drug activity, and there is no other provision in the lease that would make tenant knowledge of drug activity a necessary precondition of eviction.

*Id*. at 554. The court also refused to read such a knowledge requirement into the language of the Housing Act, as amended in 1988 and 1990, upon which the housing authority had based the subject

provision.  The court explained:

> Knowledge requirements in statutes are so common in general and so obviously relevant to this particular issue that we reject the argument that Congress either failed inadvertently to include a knowledge requirement, somehow included it by implication, or said "control" but really meant knowledge.

*Id*. (citing 42 U.S.C.A. § 1437d(l)).

In accordance with these authorities, we hold that the trial court properly entered summary judgment in favor of MHA in this unlawful detainer action against Thompson.  The lease provisions relied upon by MHA required Thompson to cause household members, guests, or persons under her control to refrain from any criminal activity that threatened the health, safety, or right to peaceful enjoyment of the premises by other tenants.  In executing the lease and addendum, Thompson agreed that the activity prohibited by these provisions included any drug-related criminal activity on or off the premises.  Thompson also acknowledged that any such criminal activity by a member of her household, a guest, or other person under her control would constitute good cause for termination of the lease and her tenancy.

The language of these provisions is clear and unambiguous.  By signing the lease with MHA, Thompson agreed to cause her guests, such as Williams, to refrain from engaging in any drug-related criminal activity while on the premises.  Thus, the lease provisions placed upon Thompson the affirmative obligation to ensure that her guests did not engage in drug-related criminal activity while in her apartment.  In light of the affirmative nature of this obligation, Thompson's actual or constructive knowledge of Williams' drug-related criminal activity was irrelevant.  Regardless of her knowledge of Williams' drug activity, under the terms of her lease, Thompson became responsible for such activity once she granted Williams access to her apartment.

Even when viewed in the light most favorable to Thompson, the evidence presented below demonstrated that Thompson violated her lease with MHA when she granted Williams access to her apartment and subsequently failed to cause Williams to refrain from possessing illegal drugs while in the apartment.  Under these circumstances, MHA had the right to enforce the lease

provisions by evicting Thompson.

In contending that an eviction requires a showing of some degree of fault on the part of the tenant, Thompson cites authorities indicating (1) that a housing authority should exercise its discretion in light of all the relevant circumstances when it decides whether to evict a tenant for criminal activity, (2) that the relevant circumstances include, ***inter alia***, the tenant's knowledge of the criminal activity and the tenant's efforts to prevent the activity, and (3) that the housing authority's decision is subject to review by the courts.

In its report accompanying the 1990 amendments to the Housing Act, for instance, the congressional committee included the following statements:

> The Committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane judgment by the [housing authority] and the eviction court. For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity.

S. Rep. No. 101-316, at 179 (1990), *reprinted in* 1990 U.S.C.C.A.N. 5763, 5941. Moreover, a HUD regulation provides that, in deciding whether to evict for criminal activity, a housing authority

> shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effects that the eviction would have on family members not involved in the proscribed activity. In appropriate cases, the [housing authority] may permit continued occupancy by remaining family members and may impose a condition that family members who engaged in the proscribed activity will not reside in the unit.

24 C.F.R. § 966.4(l)(5)(i) (1998). Finally, HUD's "One Strike" policy contains the following statements:

> [Housing authorities] retain the flexibility to handle these cases on an individualized basis, and they should exercise reasonable discretion in light of all the relevant circumstances. In particular, when a tenant has taken all reasonable steps to prevent the criminal activity, eviction may not always be warranted or proper. To ensure both humane

results and success in court, [housing authorities] should undertake a case-by-case analysis before proceeding with eviction. If they do seek eviction, [housing authorities] should be prepared to persuade a court that eviction is justified.

*Syracuse Hous. Auth. v. Boule*, 658 N.Y.S.2d 776, 780 (Syracuse City Ct. 1996) (quoting HUD's "One Strike and You're Out" statement of policy in public housing issued in March 1996), *aff'd*, 676 N.Y.S.2d 741 (Onondaga County Ct. 1998). Relying upon these authorities, some courts have held that a tenant may be evicted for the drug-related criminal activity of a guest or household member only if the tenant is personally at fault for the criminal activity, such as where the tenant had knowledge of the criminal activity or where the tenant failed to take reasonable steps to prevent the activity. *See Charlotte Hous. Auth. v. Patterson*, 464 S.E.2d 68, 72 (N.C. Ct. App. 1995); *see also Syracuse Hous. Auth. v. Boule*, 658 N.Y.S.2d 776, 780 (Syracuse City Ct. 1996), *aff'd*, 676 N.Y.S.2d 741 (Onondaga County Ct. 1998).

We decline to adopt such a standard in this case. As we previously discussed, the language of the lease signed by Thompson was clear and unambiguous. The lease included no knowledge requirement but instead placed upon Thompson the affirmative obligation to cause her guests to refrain from engaging in illegal drug activity while on the premises. Moreover, the language of the Housing Act contained no such knowledge requirement. As one appellate court observed, "[t]hat a Congressional committee may not have intended for tenant evictions to take place in the absence of knowledge, does not change the fact that when the Congress as a whole enacted [the 1990 amendments to the Housing Act] it did so without the imposition of a knowledge requirement." *Housing Auth. of New Orleans v. Green*, 657 So. 2d 552, 554 (La. Ct. App.), *writ denied*, 661 So. 2d 1355 (La. 1995), *cert. denied*, 517 U.S. 1169 (1996).

We further note that, although HUD regulations appear to grant housing authorities the discretion to evict tenants based on the criminal activity of their guests or household members, courts and other legal authorities have begun to question the extent to which courts may review a housing authority's exercise of that discretion. In refusing to inquire into a tenant's knowledge of or ability to foresee the criminal activity of her son, for example, the Supreme Court of Minnesota opined that

> [d]espite HUD's careful clarification of [housing authority] responsibilities, the regulations do not give courts similar discretion when hearing evictions involving the criminal acts of household members.  Rather, when discussing the role of courts in such evictions, HUD regulations require only that courts provide due process.  In light of HUD's careful crafting of the [housing authority's] role in eviction decisions, HUD would likely have spelled out any additional supervisory responsibilities it wished courts to take. Thus, HUD regulations, while providing tenants access to trial courts, do not empower trial courts to consider external circumstances in eviction proceedings.
>
> . . . .
>
> . . . [A] lease is a form of contract.  Unambiguous contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh.  When a lease empowers a landlord to evict for certain actions, then the trial court shall determine *de novo* whether the facts alleged in the complaint are true and whether those facts, under the terms of the lease, support termination of the lease and eviction.

*Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 703-04 (Minn. 1999) (footnotes omitted) (citing 24 C.F.R. § 966.4(l)(3)(v)(B)); *see also* William F. Maher, *Wisdom Revisited:  Judicial Intervention and the Exercise of Discretion in "Strict Liability" Public Housing Evictions*, J. Affordable Hous. & Community Dev. L., Spring 1998, at 218, 221-26.

Under this limited scope of review, the trial court's only role in this unlawful detainer action was to determine whether Williams engaged in drug-related criminal activity while he was on the premises as Thompson's guest and, thus, whether the lease provisions prohibiting such criminal activity were breached.  In light of the parties' stipulation that Williams was arrested for possession of cocaine while in Thompson's apartment at her invitation, we conclude that the trial court properly entered summary judgment in favor of MHA.

The trial court's judgment is affirmed, and this cause is remanded for further proceedings consistent with this opinion.  Costs of this appeal are taxed to Ms. Thompson, for which execution may issue if necessary.

_____

FARMER, J.

CRAWFORD, P.J., W.S. (Concurs)


HIGHERS, J. (Concurs)