990 P.2d 1201

Carol A. HENLEY, Appellant–Appellant,

v.

HAWAI'I HOUSING AUTHORITY,
Appellee–Appellee.

No. 22070.

Intermediate Court of Appeals of Hawai'i.

Dec. 8, 1999.

Toni G. Bissen, on the briefs, for appellant-appellant.

Sonia Faust, Honolulu, John C. Wong and Carolee M. Aoki, Honolulu, on the briefs, for appellee-appellee.

BURNS, C.J., ACOBA and LIM, JJ.

Opinion of the Court by LIM, J.

Carol A. Henley (Henley) appeals the October 20, 1998 Judgment of the Circuit Court of the First Circuit (circuit court) affirming the January 28, 1998 Findings of Fact, Conclusions of Law, Decision and Order of the Board of Commissioners (commission) of the Hawai'i Housing Authority (HHA), which had affirmed, in turn, the July 24, 1997 Findings of Fact, Conclusions of Law, Decision and Order of the Oahu Hearing Board A (board). The board had found Henley in violation of her Rental Agreement with HHA and ordered her and her children evicted from their federally-assisted public housing unit.

In this secondary appeal, we conclude that the circuit court was wrong in its decision, because Henley has made a convincing showing that the agency's decision was invalid, being unjust and unreasonable in its consequences, *Sussel v. Civil Service Commission,* 74 Haw. 599, 608–10, 851 P.2d 311, 316–17 (1993), because it was made upon unlawful procedure. Hawai'i Revised Statutes (HRS) § 91–14(g)(3). Consequently, we reverse.

### I. Background.

Henley and her four children moved into the Puuwai Momi housing project in August 1991.

Beginning in November 1991 and continuing into December 1996, HHA project staff reported a plethora of neighborly peccadilloes perpetrated by Henley and her constant "guests"—two purportedly erstwhile boyfriends and fathers of her children.

The reported incidents included many instances of loud, obscene and besotted arguments, fights and other disorderly and destructive conduct among the three.

Several incidents are notable in the sad litany of loutishness reported by the HHA project staff.

One in November 1991 involved the two males in their usual state of clangorous inebriation, throwing rocks and engaging in an ignoble display of public micturition on the project premises.

In October 1994, one of the males drove his car onto the project premises, over a curb and into a common area in an attempt to run the other over, damaging a wall near Henley's housing unit in the process.

In July 1996, the same driver, again drunk, drove into a parked car on the premises with such force that it was driven onto the sidewalk.

Needless to say, over the years the other tenants made constant complaints to project staff about Henley and her "guests." The police were literally barraged with calls about the three and responded often to the Henley unit, sometimes several times a week.

After most of the incidents, project staff investigated and counseled Henley about controlling her behavior and that of her "guests." On two occasions before September 1996, proposed-termination-of-lease letters were sent to Henley, one on December 7, 1992 and another on May 13, 1996. After she received the May 13, 1996 letter, Henley went to the project office to discuss the incident and the letter.

Finally, on September 23, 1996, another proposed-termination-of-lease letter was sent to Henley informing her of the HHA's intent to commence formal eviction proceedings against her for failure to conform her conduct and that of her "guests" to the requirements of her Rental Agreement.

The board's decision and order evicting Henley and her children started the chain of commission and circuit court appeal and affirmance which led to this appeal.

## II. Discussion.

■ Henley argues, and the HHA concedes, that the September 23, 1996 proposed-termination-of-lease letter contained in the record did not satisfy notice provisions of federal statutes and rules, 42 United States Code (USC) § 1437d(k); 24 Code of Federal Regulations (CFR) §§ 966.4(e)(8), 966.4(*l*)(3)(ii), 966.4(*l*)(4)(ii) and 966.4(m), or notice provisions of its own administrative rules, Hawai'i Administrative Rules (HAR) §§ 17–501–05, 17–502–10 and 17–502–11, governing evictions of federally-assisted public housing tenants, provisions which are embodied in the Rental Agreement and which must be strictly complied with in order to effect an eviction. 42 USC §§ 1437(c) and 1437(d); *Waimanalo Vil. Residents' Corp. v. Young*, 87 Hawai'i 353, 362–65, 956 P.2d 1285, 1294–97 (App.1998).

The HHA argues that the December 7, 1992 proposed-termination-of-lease letter and the May 13, 1996 proposed-termination-of-lease letter, together with the September 23, 1996 letter, comprised adequate compliance with the governing provisions.

But neither the December 7, 1992 letter nor the May 13, 1996 letter is in the record on appeal, *State v. Onishi*, 53 Haw. 593, 597, 499 P.2d 657, 660 (1972) (matters not in the record will not be considered by the appeals court), or in the record before the circuit court, HRS § 201G–57(f) (circuit court review of HHA's decision "shall be confined to the record"), or in the record before the commission, HAR § 17–501–14(d) (commission review of board's decision "shall be based solely on the record"), or in the record before the board.

Also, general descriptions of the previous letters in record documents and testimony are not, upon review, specific or complete enough to show strict compliance. The documents and testimony describing the two previous letters refer only to the grounds for eviction and to Henley's informal grievance discussions with the housing project staff. They do not in any way address the other required notices, such as notice of the right to reply; notice of the right to examine directly relevant documents, records and regulations; and notice of the right to a grievance hearing. 24 CFR § 966.4($l$)(3)(ii); HAR § 17–501–05.

■ The HHA's remaining argument in support of the circuit court's Judgment is that the notice of the eviction hearing and its attachments together contained the notifications required for the proposed-termination-of-lease letter, and thus procedural requirements were satisfied *post hoc.*

The circuit court accepted this argument and relied upon it as dispositive on the issue of compliance with procedural requirements for eviction.

A notice of eviction hearing may not, however, substitute for the required proposed-termination-of-lease letter. Each has its own lawful time and place, and the content and purpose of the one cannot satisfy that of the other. *See Staten v. Housing Authority of City of Pittsburgh,* 469 F.Supp. 1013, 1015–16 (W.D.Pa.1979) (in order to comply with federal requirements, public housing authority must establish a two notice system, one for grievance procedures, and one for eviction); *City of South San Francisco Housing Authority v. Guillory,* 41 Cal.App.4th Supp. 13, 49 Cal.Rptr.2d 367, 371 (Super.Ct.1995) ("The standard for eviction in a public housing project which receives federal funding is a matter of federal, not state, law.").

The purpose of the proposed-termination-of-lease letter is to afford the tenant recourse to less formal procedures to contest eviction, such as a one-on-one grievance discussion with the housing project office, HAR § 17–502–10, and an informal grievance hearing. HAR § 17–502–11 *et seq.*

Inasmuch as these informal pre-eviction proceedings promote settlement of agency-tenant disputes, *Samuels v. District of Columbia,* 770 F.2d 184, 189 (D.C.Cir.1985) (administrative hearings "avoid costly and divisive public housing litigation by channeling tenant-management disputes into a decentralized, informal, and relatively non-adversarial administrative process"), and promote tenant assertion of rights, *Housing Authority of City of Jersey City v. Jackson,* 749 F.Supp. 622, 624 (D.N.J.1990), it would defeat their salutary effects to hold that notice to the tenant regarding their availability can await the institution of formal eviction proceedings.

### III.  Conclusion.

Since the HHA did not comply with eviction procedures required by law, we reverse the October 20, 1998 Judgment of the circuit court and direct the circuit court to vacate the January 28, 1998 and July 24, 1997 Findings of Fact, Conclusions of Law, Decision and Order of the commission and the board, respectively.